672 A.2d 469 (1995)
VERMONT AGENCY OF NATURAL RESOURCES
v.
Mark A. BEAN.
No. 94-136.
Supreme Court of Vermont.
December 15, 1995.
*470 Jeffrey L. Amestoy, Attorney General, and Conrad W. Smith, Assistant Attorney General, Montpelier, for plaintiff-appellee.
Oreste V. Valsangiacomo, Jr. of Valsangiacomo, Detora & McQuesten, Barre, for defendant-appellant.
Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
ALLEN, Chief Justice.
Defendant Mark Bean and cross-appellant Secretary of the Vermont Agency of Natural Resources appeal the Decision and Order of the Environmental Law Division (ELD) penalizing defendant for violations of his Act 250 permit, mobile home park permit, and Act 250. We affirm in part and reverse in part.
Defendant is the owner of a mobile home park in Lyndon, Vermont. Prior to construction of the park, defendant applied for and received (1) approval of the water and sewer system from the Department of Health (DOH), (2) a Mobile Home Park permit (MHP permit) from the Agency of Natural Resources (ANR), and (3) an Act 250 permit from the District 7 Environmental Commission (Commission). The MHP permit incorporated the DOH approval letter, and the Act 250 permit incorporated the MHP permit.
The incorporated permit authorized twenty-seven mobile home sites at the park[*] and required appellant to complete the project in accordance with the approved plans. Alteration of the plans required prior written approval of ANR. The permit required that a registered professional engineer inspect and certify the water and sewer system after construction but prior to occupancy. The permit also required two on-site drainage swales to control erosion and to alleviate an existing problem with standing water in the spring of each year. The Commission stated that the Act 250 aesthetics criterion would be satisfied if appellant preserved the existing woods on the western boundary of the park, planted two trees on each mobile home lot, and created a double row of spruce trees on the northern edge of the park.
Defendant began construction of the park in late 1988. Pursuant to his permit, defendant installed all the lots, water lines, sewer lines, and manholes under the general supervision of a contractor or professional engineer. Without amending his permit or obtaining written approval, however, defendant developed lots 2, 3, 4, 5, and 6, and placed mobile homes on lots 2-5. These lots appeared on the proposed plan for the park, but were not approved as sites for mobile homes. Defendant then developed mobile home sites V, W, X, Y, and Z not at the approved locations but where no lots had appeared on the plan. He built an unapproved access road and installed unapproved water and sewer lines to serve the V-Z sites. Defendant also cut into the protected tree line on one boundary of the park and removed trees that were supposed to remain on mobile home site 12. In the spring and *471 summer of 1989, defendant left stockpiles of topsoil and mobile home sites under construction in an unstable condition, contrary to the erosion control plan. In addition, defendant did not properly construct or maintain the two on-site drainage swales, failed to plant the two rows of eight-foot-tall spruce trees on the northern edge of the park, and failed to plant trees on each lot, as required by the permit.
A representative of ANR visited the site on March 19, 1991, and subsequently issued a Notice of Alleged Violation (NOAV). The NOAV, received by appellant on April 12, 1991, listed violations of Act 250 and the Act 250 permit, including the development of unapproved mobile home sites, the failure to implement the landscaping plan, the unapproved removal of trees, and the creation of erosion problems associated with the unimproved sites under construction and the unapproved access road. In April 1991, defendant promised to give ANR a formal reply to the NOAV after consultation with his attorney. There was no further correspondence between defendant and ANR, DOH, or the Commission for at least five months. The agencies resumed enforcement efforts again in October and continued into the spring of 1992. On April 17, 1992, appellant received a second NOAV, listing many violations included in the 1991 NOAV as well as several new violations. The drainage swales were not mentioned in either the 1991 NOAV or the 1992 NOAV. Correspondence between defendant and the agencies continued through the end of hearings on May 11, 1993.
ANR issued an Administrative Order pursuant to 10 V.S.A. § 8008 on October 28, 1992, imposing penalties of $33,375 for violations of the Act 250 permit, Act 250, the MHP permit, and the MHP statute. Defendant appealed the Administrative Order to the ELD. The ELD found multiple violations of the Act 250 permit, Act 250, the MHP permit, and the MHP statute, and determined that the violations led to actual and potential harm to the environment, public health, and public welfare. The ELD issued its Decision and Order on January 17, 1994, imposing penalties of $25,178 based on these violations.
Defendant raises four issues on appeal. First, he argues that the penalties for actual and potential harm are based on conclusions not supported by the evidence or the findings of fact. Second, he claims that the failure of ANR to give him notice of the drainage swale violations precludes assessment of penalties for any violations of his permits resulting from the inadequacy of the swales, and that any alleged violation based on siltation of the swales is without support in the record. Third, he alleges that the ELD failed to consider appropriate mitigating factors in determining the amount of penalties imposed. Fourth, he claims that the ELD treated dissimilar violations identically. On cross-appeal, ANR claims that the ELD erred when it held that the Uniform Environmental Law Enforcement Act does not allow penalties for violations occurring before November 2, 1990, that the ELD arbitrarily and capriciously refused to impose penalties for certain months on the basis of unreasonable delay in enforcement, and that the ELD erred when it based the penalty on economic benefit exclusively.

I.
Defendant first claims that the ELD erred in assessing penalties against him because the conclusions upon which the penalties were based are not supported by the evidence or the findings of fact. Under 10 V.S.A. § 8012(b), the ELD may review and determine anew the amount of any penalties assessed for violations of Act 250 by applying the criteria set forth in 10 V.S.A. § 8010(b). The criteria to be evaluated include the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation. 10 V.S.A. § 8010(b)(1). ANR produced evidence demonstrating the potential for adverse impacts on public health and welfare resulting from four leaking manholes in defendant's sewer line. ANR also produced evidence that actual impacts on public welfare and environment had resulted from the failure of defendant to properly maintain erosion control devices, and that actual impacts to the aesthetics of the area resulted from defendant's failure to maintain the grounds as required in the permits. *472 Based on this evidence, the ELD found that defendant's activities led to actual and potential impacts on public welfare and the environment. The ELD concluded that the Uniform Environmental Law Enforcement Act authorized penalties for the impacts, and calculated the penalties accordingly. 10 V.S.A. §§ 8010(b), 8012(b)(4).
Actual and potential harm were not the only bases for the penalties. The ELD also found that, whether harm resulted or not, defendant had violated his permit and disregarded Vermont's environmental laws on several occasions. The ELD then concluded that the Uniform Environmental Law Enforcement Act authorizes imposition of monetary penalties, even without lasting public welfare or environmental harm, in order to deter defendant and others from disregarding permit requirements. 10 V.S.A. § 8010(b)(6). Finally, the ELD stated that its ruling furthered the even-handed enforcement of Vermont's environmental laws. 10 V.S.A. § 8001(3). The record provides reasonable and credible evidence in support of the ELD's findings, and the ELD did not err in assessing penalties based on conclusions from these findings. See Jarvis v. Gillespie, 155 Vt. 633, 637, 587 A.2d 981, 984 (1991) (findings of trial court are not clearly erroneous and will stand if there is any reasonable and credible evidence to support them).

II.
Defendant next argues that the ELD erred when it assessed penalties for drainage swale violations because ANR failed to give him notice in either of the two NOAVs or the Administrative Order. This argument fails for two reasons. First, the language of the statute itself does not mandate notice of a probable or actual violation. Rather, the statute gives the Secretary of ANR discretion in determining whether to send notice in an NOAV: "[T]he secretary may issue a written warning...." 10 V.S.A. § 8006(a) (emphasis added.). Second, the Administrative Order notified defendant of circumstances evincing a violation and ordered him to construct the swales in accordance with the approved plans. Thus, defendant's argument that the penalties were improperly assessed because of a failure to notify him of any violations is unavailing.
Defendant further asserts that, even if notice was sufficient for the ELD to have assessed penalties against him for any drainage swale violations, the evidence does not support the ELD's finding that the eastern drainage swale received erosion siltation from the access road and unstable mobile home sites under construction. Witnesses at the trial, however, testified that the drainage swale sat below the access road and the unstable mobile home sites, that the construction and clearing on the road and the sites would have an impact on the drainage system, that the erosion was evident, and that over a foot of fine silty clay covered the swale. Further testimony showed that the siltation caused water to pool around the area of the eastern swale during the spring of each year, and that these flood waters surrounded the septic pump for the park and encroached upon several of the mobile home sites. In light of this testimony, we think the ELD had sufficient evidence to support its findings. See Jarvis, 155 Vt. at 637, 587 A.2d at 984 (findings of trial court are not clearly erroneous and will stand if there is any reasonable and credible evidence to support them).

III.
Both parties claim that the ELD erred in its consideration of mitigating factors in its penalty calculations. See 10 V.S.A. § 8010(b)(2) (in determining amount of penalty, ELD must consider the presence of mitigating circumstances, including unreasonable delay in enforcement). Defendant argues that the ELD failed to mitigate altogether. The ELD specifically noted, however, the many personal and financial difficulties defendant experienced during the time of violation, and set the penalties at the value of the economic gain from the violations. The ELD also mitigated the penalties by not penalizing defendant for five months because of unreasonable delay in enforcement by ANR.
On cross-appeal, ANR argues that the ELD acted arbitrarily and capriciously when *473 it mitigated on the basis of unreasonable delay in enforcement. In support of this argument, ANR cites testimony that voluntary compliance efforts were pursued throughout the contested periods and that these efforts, when coupled with the limited resources of ANR, justify the allegedly dilatory enforcement. Although we recognize that ANR faces resource constraints and seeks voluntary compliance in enforcing environmental regulations, it is outside the province of this Court to second-guess the ELD's determination regarding the reasonableness of the delay in enforcement. Because the ELD did not abuse its discretion, we will not disturb the ELD's consideration of mitigating factors or its refusal to assess a penalty during the time of unreasonable delay. See Vermont Agency of Natural Resources v. Duranleau, 159 Vt. 233, 239-40, 617 A.2d 143, 147 (1992) (ELD has discretion to consider whether mitigating circumstances exist and how they affect assessment of penalty; assessment will not be disturbed unless unreasonable).

IV.
In defendant's final argument, he claims that the ELD erred by treating dissimilar violations identically. The violations at issue here are of two distinct groups. Lots 2, 3, 4, 5, and 6 make up one group; lots V, W, X, Y, and Z make up the second group. Lots 2-6 appeared on the proposed plan for the park but were not approved as mobile home sites. Defendant applied for amendment of his permits to allow him to develop lots 2-6 as mobile home sites. Defendant developed the lots prior to approval of the amendment application and placed mobile homes on lots 2-5. By contrast, defendant developed mobile home sites V-Z not at the approved locations but where no lots had appeared on the proposed plan. Defendant never sought amendment of his permits prior to or after construction of lots V-Z. The ELD found that, regardless of their difference, defendant's unapproved developments in each group violated the MHP permit, the MHP statute, the Act 250 permit, and Act 250, and penalized defendant for all economic gain resulting from the violations. Defendant asserts that the ELD erred in penalizing him in the same way for these violations because they are of two distinct types. We disagree.
The ELD based the penalties not on the specifics of the individual violations, but on the basis that one violation is equally as punishable as another. Nothing in the Uniform Environmental Law Enforcement Act precludes such an interpretation. Section 8012(b)(1) gives the ELD authority to determine whether a violation has occurred, and § 8012(b)(4) allows the ELD to determine the appropriate penalty for such violations. 10 V.S.A. § 8012(b)(1), (4). Regardless of whether defendant subsequently sought an amended permit, he violated his permit by developing mobile home sites on unapproved lots 2-6 and V-Z. The ELD set the penalty for these violations at the economic gain from the violations. We will not disturb the penalty assessment because the ELD acted within its authority and the penalty was not unreasonable. See Agency of Natural Resources v. Godnick, 162 Vt. 588, 597-98, 652 A.2d 988, 994 (1994) (ELD has broad discretion in fashioning appropriate sanctions).

V.
ANR raises two further issues on cross-appeal. First, ANR claims that the ELD erred when it held that the Uniform Environmental Law Enforcement Act does not allow penalties for violations occurring before November 2, 1990. We recently held that the administrative penalty provisions of the Act are applicable retrospectively for violations occurring before November 2, 1990. Id. at 593-95, 652 A.2d at 992-93. Accordingly, we reverse on this issue and remand for proceedings to determine the amount of penalties, if any, for violations during that time.
Second, ANR argues that the ELD erred when it based the penalty on defendant's economic gain from the violations while ignoring the other penalty criteria. The ELD's decision, however, shows this argument to be without merit. The ELD explicitly mentions all eight of the factors required by 10 V.S.A. § 8010(b). Because the ELD did not disregard the other penalty criteria, *474 we will not disturb the ELD's penalty calculation. Id. at 597-98, 652 A.2d at 994 (ELD has broad discretion in fashioning appropriate sanctions).
Affirmed, except for issue of penalties for violations prior to November 2, 1990, which ruling is reversed; cause remanded.
NOTES
[*] Although the Act 250 permit alone authorizes a thirty-three-unit park, the incorporated permit limits the approved number of sites to twenty-seven.