## Secretary, Vermont Agency of Natural Resources and City of South Burlington v. Frank Irish

[738 A.2d 571]

No. 97-509

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed June 25, 1999

Motion for Reargument Denied July 21, 1999

*Gary S. Kessler*, Senior Environmental Enforcement Attorney, Waterbury, for Plaintiff-Appellee Agency of Natural Resources.

*Joseph S. McLean* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Plaintiff-Appellee City of South Burlington.

*Michael B. Clapp*, Burlington, for Defendant-Appellant.

**Skoglund, J.** Defendant Frank Irish appeals from an Environmental Court decision that certain excavation work on his property was in violation of the Vermont Wetland Rules, the City of South Burlington zoning bylaws, and 10 V.S.A. § 1259 (discharge of waste into state waters without a permit). Defendant contends: (1) the Wetland Rules failed to provide adequate notice that the work was occurring in a significant wetland; (2) the area in question had not been validly designated as a significant wetland; (3) the work was for farming purposes and therefore did not violate the Wetland Rules; (4) the evidence did not support a finding that he violated 10 V.S.A. § 1259; (5) the zoning-violation finding was erroneous; and (6) the monetary penalties were improper. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

Defendant is a farmer whose property is located in South Burlington. The subject of this dispute concerns a 26-acre parcel of the farm lying south of Allen Road. The northerly and easterly halves of the parcel consist of hayfields. Approximately in the middle of the parcel is a wetland demarcated on the National Wetland Inventory (NWI) maps for the State of Vermont.

In February 1996, the Irish Development Corporation submitted an application to the City for a 48-lot subdivision for the property. The application listed defendant as the owner of the property, and Peter Smejkal and Ron Brousseau as contacts for the applicant corporation. On March 19, 1996, Catherine O'Brien, assistant wetlands coordinator for the Agency of Natural Resources (Agency), visited the site in response to a request by the City. She informed Smejkal that the site contained significant wetlands, including areas contiguous to wetlands identified on the NWI maps, informed him that a conditional use determination (CUD) by the Secretary of the Agency would be required before any development could take place on the property,

and recommended that he hire a wetlands consultant to further define the wetland areas. The consultant was estimated to cost $1500.

Later that month, defendant hired a contractor to excavate a drainage ditch along the southern and western boundaries of the parcel to intercept water draining onto the land from an existing water supply line. The excavator proceeded to cut and remove trees and brush from the area, grub up tree roots and stumps, excavate the ditch, and deposit some of the brush and roots into the ditch. In early April, O'Brien visited the site again in response to a complaint that work was occurring in a protected wetland. In addition to the excavation work, O'Brien observed substantial erosion in the ditch that was causing a continual discharge of silt into the nearby Bartlett Brook.

The City sent defendant a notice of violation on April 17, followed by a second notice of violation on April 30, alleging violations of the City's zoning bylaws. In early May, the Agency sent a notice of violation, stating that the excavation work was within a significant wetland area and required a CUD under the Vermont Wetland Rules. One year later, in May 1997, the Secretary of the Agency issued an administrative order finding that defendant had violated § 6.3 of the Wetland Rules by stumping, grading and ditching in a significant wetland without first obtaining a CUD, and had further violated 10 V.S.A. § 1259 by causing a discharge into state waters. The same month, the City filed a complaint in Chittenden Superior Court alleging violations of the City's zoning bylaws. Defendant filed a request for hearing on the Agency's administrative order with the environmental court, pursuant to 10 V.S.A. § 8012(a). By stipulation of the parties, the City's complaint was consolidated with the proceeding on the administrative order.

Following an evidentiary hearing, the court issued a written decision, finding that defendant had committed the charged violations, and imposed "alternative penalties." The court imposed a base penalty of $2,500 for the state violations, and $2,195 for the city violations. In the event that on or before May 6, 2001, the property was sold, subdivided, or developed by defendant for other than agricultural purposes, the court ordered that defendant would be required to pay an additional penalty of $15,000 to the State, and an additional penalty of $19,755 to the City. This appeal followed.

## DISCUSSION

*Notice*

Defendant first contends the Vermont Wetland Rules failed to

provide sufficient notice that the portion of his property where the excavation work was performed was a significant wetland, thereby requiring a CUD before the work could be commenced. The Wetland Rules require a CUD by the Secretary for certain uses within "significant" wetlands. See Vermont Wetland Rules, § 6.3.[1] The Wetland Rules provide further that all wetlands shown on the NWI maps for the State of Vermont, and all wetlands contiguous to such mapped wetlands, are presumed to be Class Two wetlands, which in turn are defined as significant. See *id.* §§ 4.1, 4.2.[2] In addition, the Wetland Rules set forth standards and methods for identifying the boundary between wetland and upland areas, and distinguishing wetlands from deepwater habitat. See *id.* § 3.2.

It is undisputed that the NWI maps for Vermont showed a wetland on defendant's property. Although the specific area where the excavation work was performed lay outside the delineated wetland, the Agency alleged, and the court found, that it was within a contiguous wetland area. Defendant asserts that the rule designating contiguous wetlands as significant failed to give reasonable notice of the precise area subject to the CUD requirement.

■ Due process of law requires notice sufficient to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and to "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); see also *State v. Galusha*, 164 Vt. 91, 94, 665 A.2d 595, 597 (1995). The degree of precision that will satisfy this standard, however, "varies with the nature — and in particular, with the consequences of enforcement — of the statutory provision." *General Media Communications, Inc. v. Cohen*, 131 F.3d 273, 286 (2d Cir. 1997). As the United States Supreme Court has explained:

---

[1] Section 6.3 in pertinent part provides: "All uses which are not allowed uses are conditional uses. Conditional uses may be allowed, within significant wetlands or their associated buffer zones, only under the terms of an order issued by the Secretary."

[2] Section 4.1(b) defines Class Two wetlands as those "found to be so significant, either taken alone or in conjunction with other wetlands, that they merit protection under these Rules."

Section 4.2(b) provides that "[a]ll wetlands shown on the National Wetlands Inventory maps for the State of Vermont (1978) published by the U.S. Fish and Wildlife Service, and all wetlands contiguous to such mapped wetlands, are presumed to be Class Two wetlands, unless determined otherwise by the Board as provided for in Section 7 of these rules."

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

*Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982) (footnotes omitted); see also *In re 1650 Cases of Seized Liquor*, 168 Vt. 314, 324, 721 A.2d 100, 107 (1998); *Rogers v. Watson*, 156 Vt. 483, 491, 594 A.2d 409, 413-14 (1991).

Assessed in light of this standard, the Wetland Rules were sufficient to put defendant on reasonable notice of the existence of significant wetland areas and the possibility that the planned excavation might require environmental review and approval. Indeed, the record discloses that defendant did not have to inquire about the possibility. Catherine O'Brien, the assistant wetlands coordinator for the State of Vermont, was contacted by the City after it received the subdivision application for defendant's property, and she in turn contacted the applicant and visited defendant's property in mid-March 1996, prior to commencement of the excavation. O'Brien identified several areas of significant wetland on the property, including areas contiguous to those identified on the NWI maps, explained that any work within these areas would require a prior CUD, and recommended that a wetlands consultant be hired to further delineate the extent of the wetland area. O'Brien wrote a follow-up letter on March 27 in which she confirmed the presence of significant wetlands on and adjacent to the property, recommended the hiring of a wetlands consultant, and reaffirmed the need for a CUD before commencing work in the area. Several weeks later, in a letter addressed to defendant dated May 6, 1996, O'Brien summarized her findings from the site visits and her conversations with Smejkal, and reaffirmed the need to obtain a CUD because of the presence of significant wetlands. O'Brien also enclosed a copy of her earlier letter to Smejkal.

Defendant did not hire a wetlands consultant or apply for a CUD. Instead, in late March, defendant hired an excavation contractor, who

began work in one of the contiguous wetland areas, cutting and removing trees and brush, excavating an irrigation ditch, and depositing some of the removed brush and stumps in the ditch. During a second site visit in late April, O'Brien discovered that substantial damage had been done to the wetland area by the excavation. A notice of violation issued shortly thereafter.

Thus, although the Wetland Rules themselves did not define the precise boundaries of the contiguous wetland areas on defendant's property, the Agency clearly put defendant on notice of the existence of those areas, offered its administrative expertise and advice to clarify the precise boundaries of the wetland areas, and delineated standards and methods for identifying those areas. See *Village of Hoffman Estates*, 455 U.S. at 498-99 (regulatory statute may be less precise where regulated enterprise has ability to clarify meaning on its own, or through administrative process). Accordingly, we are satisfied that the Wetland Rules provided ample notice to a person of ordinary intelligence of the need to obtain a CUD for the work in question. The imposition of civil penalties in these circumstances did not violate due process.

*Designation of Wetlands*

Defendant next contends that Wetland Rule § 6.3, requiring a CUD for certain conditional uses within a significant wetland, was unenforceable because the Water Resources Board failed to conduct the statutorily mandated evaluation necessary to designate as "significant" the specific wetlands on defendant's property.

Defendant relies on 10 V.S.A. § 905(7), which provides that the Board shall: "Adopt rules for the identification of wetlands which are so significant that they merit protection. Any determination that a particular wetland is significant will result from an evaluation of at least the following functions which the wetland serves." The statute then sets forth eleven separate criteria, including such functions as water storage, spawning of fresh water fish, stopovers for migratory birds, and habitation for endangered species. *Id.* § 905(7)(A), (D), (F) and (H).

Because the Board did not evaluate the specific wetland area located on defendant's property pursuant to the criteria set forth in § 905(7), defendant argues that it lacked authority to designate the wetland as significant.

The argument is unpersuasive. As noted, the Vermont Wetland Rules provide that all wetlands identified on the NWI maps for the

State of Vermont, and all wetlands contiguous thereto, are presumed to be Class Two wetlands, which in turn are presumed to serve the functions that qualify a wetland as significant. See Wetland Rules, §§ 4.1, 4.2. These rules were the product of a 1988 Agency study of the Vermont wetlands identified on the NWI maps. Based on a random sample, the study found that over 93% of the evaluated NWI wetlands were significant based upon one or more of the eleven criteria set forth in 10 V.S.A. § 905(7).

■ In light of the over 220,000 acres of NWI wetlands in Vermont, the Board's decision to designate all of the NWI wetlands as significant, based upon the high percentage of the sample meeting the statutory criteria, was reasonable. The statute does not explicitly require a separate and detailed evaluation of every wetland designated as significant, and we cannot say that the Board's reliance on the Agency study constituted clear error. See *State v. Rolfe*, 166 Vt. 1, 8, 686 A.2d 949, 955 (1996) (the Court "defer[s] to an agency's interpretation of enabling legislation unless there is a compelling indication of error"). Furthermore, the Wetland Rules afforded defendant, or any other affected landowner, the opportunity to petition the Board to reclassify the wetland, and areas contiguous thereto, to a higher or lower classification. See Wetland Rules, § 7. Accordingly, the Board's classification of the NWI wetlands was not clearly erroneous.

*Agricultural Use*

■ Defendant next contends he was not subject to the CUD requirement because the excavation work was for an agricultural purpose. The argument implicates two provisions of the Wetland Rules. Section 3 exempts from the definition of a wetland those areas used for "farming activities," which are generally limited to the "grow[ing] of food or crops . . . in ordinary rotation." Wetland Rules, § 3.1(c); see also 10 V.S.A. § 902(5) ("wetlands" shall exclude "such areas as grow food or crops in connection with farming activities"). The rules provide further that "[t]he exemption will expire whenever the area is no longer used to grow food or crops or in ordinary rotation." Wetland Rules, § 3.1(c). The court here found, and the evidence amply demonstrated, that the area where the work was performed was not being used to grow food or crops in ordinary rotation, and had not been farmed for many years. Therefore, it did not qualify for the exemption.

In addition to the farming exemption, the Wetland Rules also provide that farming constitutes an "allowed use" within a significant wetland area. See Wetland Rules, § 6.2. "[P]rovided that the configuration of the wetland's outlet or the flow of water into or out of the wetland is not altered and that no draining, dredging, filling, or grading occurs," a landowner may engage in "[t]he growing of food or crops in connection with farming activities" without prior review by the Secretary. *Id.* § 6.2(f). Thus, it is undisputed that while the farming exemption requires a current and ongoing use of the land for growing crops, an "allowed use" may include the preparation of land for future farming purposes.

Defendant contends that the excavation work was performed for the purpose of preparing the area for pasture and crop production, and therefore constituted an allowed use that required no prior approval. Defendant testified that this was his purpose, and the excavation contractor provided some corroboration, recalling that defendant had said something about wanting to grow soybeans. The State asserts, on the contrary, that the work was not to prepare the land for farming, but rather to prepare the area for development in accordance with the subdivision proposal, a conditional use that required prior approval from the Secretary. The State relies on a map of the proposed subdivision showing the excavation area divided into housing lots. The court's finding on this issue was decidedly ambiguous. It stated:

> From the evidence we cannot find that the disturbed area constituted land which grows food or crops in connection with farming activities. 10 V.S.A. § 902(5) and Vermont Wetland Rules § 6.2(f). Unlike the neighboring fields, the disturbed area showed no traces of having been used as cropland, pasture, or other farmland in accepted agricultural practices.

Although the court's finding clearly concerns the farming "exemption," the citations relate to farming as an "allowed use." Despite the confusion, it is clear that the court made no factual finding concerning defendant's *purpose* in undertaking the work, other than noting that defendant "believed that drainage or development work in a wetland would be exempt if it was for agricultural purposes." Absent a finding on this issue, we are unable to determine whether the excavation work was a conditional or an allowed use, and therefore cannot adequately review the court's findings that defend-

ant was required to obtain a CUD, and violated § 6.3 of the Wetland Rules by failing to do so. Accordingly, this portion of the judgment must be reversed, and the case remanded to the trial court for further findings and, if necessary, additional evidence on these issues.

## Discharge Without a Permit

Defendant next contends the evidence failed to support the court's finding of a violation of 10 V.S.A. § 1259 (discharge into waters of state without a permit). Defendant asserts that he did not intend a discharge into Bartlett Brook, and that the discharge resulted from the Agency's stop-work order which prevented him from completing the ditch.

■ The claims are unpersuasive. Although the law requires that any person who intends to discharge waste into state waters must obtain a permit, see 10 V.S.A. § 1263, there is no requirement that the State prove intent to establish a violation of § 1259, which simply provides that, "No person shall discharge any waste, substance, or material into waters of the state . . . without first obtaining a permit . . . ." Furthermore, the record showed that Catherine O'Brien, the assistant wetlands coordinator for the Agency, visited the site in April, one month *before* the stop-work order, and observed significant erosion of silt and sediments from the ditch into Bartlett Brook. Accordingly, the court's finding of a violation of § 1259 was not clearly erroneous. See *Agency of Natural Resources v. Bean*, 164 Vt. 438, 443, 672 A.2d 469, 472 (1995) (findings of trial court are not clearly erroneous and will stand if there is any credible evidence to support them).

## Zoning Violations

Defendant raises several claims concerning the zoning violations. The City's zoning bylaws permit certain uses, including farming, within the Conservation and Open Space District where defendant's land is located, subject to certain specific limitations. The use may not damage the quantity or quality of surface or ground water, and any excavation of earth materials or cutting or removal of trees is limited to the extent necessitated by the permitted use. See South Burlington Zoning Regs., § 3.40.

■ The court here found that the same activities that violated § 6.3 of the Wetland Rules and 10 V.S.A. § 1259 also violated the above-referenced zoning provisions. Defendant argues that the find-

ing was unclear as to the nature of the violations, and was unsupported by the evidence. There was no lack of clarity in the court's finding, however, which plainly referred to the clearing of trees, brush, and stumps, the depositing of debris in the irrigation ditch, and the discharge of sediment into Bartlett Brook. Furthermore, even assuming, as defendant contends, that the work was done for agricultural purposes, the evidence amply supported a finding that erosion from the irrigation ditch had impaired the quality of surface water, and that the excavation and removal of trees and brush exceeded what was necessary for the supposed use, in violation of the zoning bylaws. Although defendant argues that the Accepted Agricultural Practice regulations adopted by the Commissioner of the Department of Agriculture, Food and Markets specifically authorize the ditching and subsurface draining of farm fields, they also explicitly prohibit the discharge of waste into the surface waters of the state, in accordance with state law. See Accepted Agricultural Practice Regs., §§ 3.2(e), 4.01(a). Thus, the court's finding was supported by the evidence, and must be upheld. See *Bean*, 164 Vt. at 443, 672 A.2d at 472 (court's findings will stand if supported by any credible evidence).

■ Finally, defendant contends the City's complaint failed to adequately specify the zoning violations subsequently found by the trial court. All of the issues relating to the violations found by the court were actively tried by the parties. Accordingly, they were properly addressed by the trial court. See V.R.C.P. 15(b) (when issues not raised by pleadings are tried by express or implied consent of parties, they shall be treated in all respects as if they had been raised in pleadings).[3]

*Penalties*

Finally, defendant contends that the monetary penalties were erroneously imposed in three respects. First, he contends that the base fines payable to the State ($2,500) and to the City ($2,195) for failure to take remedial action were improper because the State's notice of violation of May 6, 1996, ordered defendant to stop work on the site. The notice in question, however, ordered defendant to cease the excavation work that was causing erosion and damage within a

---

[3] The parties also dispute whether defendant properly appealed the City's two violation notices. In view of our holding that the evidence supported the finding, we need not address this issue.

protected wetland. It did not prohibit defendant from taking corrective action; indeed, it urged defendant to take remedial measures, stating, "[y]our efforts to achieve compliance may lessen the severity of the final result of any enforcement action." The notice further directed defendant to call or write the Agency concerning his efforts to "correct this alleged violation." Accordingly, defendant's claim is without merit.

■ Defendant also argues that the imposition of a penalty based upon the avoided cost of hiring a wetlands consultant, estimated at $1,500, was improper because defendant was not a partner in the corporation proposing the development. Defendant owned the property, knew of the plans to build the development, instigated the excavation work, and was on notice of the alleged violations and the administrative order requiring, among other remediation measures, that he hire a wetlands consultant. Under these circumstances, the penalty was proper.

Lastly, defendant contends the imposition of conditional penalties was improper. In addition to the base penalties, the court ruled that if, prior to May 6, 2001, the property is "sold or otherwise transferred for any reason, or is subdivided or developed by [defendant] for other than agricultural or open space purposes," defendant would be required to pay an additional penalty of $15,000 to the State, and an additional penalty of $19,755 to the City, on account of the violations. The conditional penalties were designed, the court explained, "to account for whether the ditching and drainage activities are in fact linked to future sale, transfer or development of the property."[4]

■ The imposition of civil penalties represents a discretionary ruling that will not be reversed if there is any reasonable basis for the ruling. See *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 528, 711 A.2d 1163, 1171 (1998). Here, the court's conclusion that a higher penalty would be warranted if the excavation was undertaken to enable the development and sale of the property was reasonable. In that event, the enhanced penalty would properly reflect the potential economic gain from the violation, see 10 V.S.A. § 8010(b)(5), and would fall well

---

[4] The City had requested a fine of $50 per day for the 439 days of violation between the effective date of the notice of violation and the date of trial. The base penalty of $2195 represented a penalty of $5 per day for the violations. The conditional penalty of $19,755 represented an additional $45 penalty per day. The State had proposed a total penalty of $17,500. The court imposed a base penalty of $2500. The conditional penalty of $15,000 represented the balance of the penalty requested by the State.

within the remedial scope and limits of the zoning-penalty statute. See 24 V.S.A. § 4444; *Dunkling*, 167 Vt. at 528-29, 711 A.2d at 1171.

The court's broad discretion, however, did not include the authority to simply decline to rule on whether the excavation was done for development purposes. The trial court has a fundamental duty to make all findings necessary to support its conclusions, resolve the issues before it, and provide an adequate basis for appellate review. See V.R.C.P. 52(a); *Roy v. Mugford*, 161 Vt. 501, 507, 642 A.2d 688, 692 (1994). This includes the duty to make all findings necessary for the assessment of an appropriate penalty. Although understandable given the conflicting evidence, the court's decision to defer making findings on the purpose of the excavation work violated this fundamental duty. Defendant is entitled to a definitive ruling on this factual issue, which is critical not only to the court's conclusion that defendant violated Wetland Rules, § 6.3 (as previously discussed), but also to the penalty ultimately to be imposed. Accordingly, the imposition of alternative penalties must be reversed, and the matter remanded for further findings and, if necessary, additional evidence on these issues.

*Those portions of the judgments finding a violation of Vermont Wetland Rules, § 6.3, and imposing alternative penalties, are reversed, and the case is remanded for further proceedings on these issues. In all other respects, the judgments are affirmed.*