STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| Secretary, Vermont Agency of Natural Resources, Plaintiff, v. Robert and Andrea Sanford, Respondents | } } } } } } } } } } } } } | Docket No. 64-5-13 Vtec (Administrative Order enforcement proceeding) |

## Decision on the Merits

This matter came before the Court for a merits hearing after Respondents Robert and Andrea Sanford (Respondents) filed a timely request for a hearing and gave notice contesting the February 13, 2013 Administrative Order (AO) that the Secretary of the Vermont Agency of Natural Resources (ANR) issued against Respondents. The AO was served upon Respondents on April 30, 2013 and filed with the Court on May 16, 2013. ANR alleged in the AO that Respondents altered a stream without a permit and caused material to discharge into waters of the State without first receiving authority to do so. The AO includes an ANR directive that Respondent pay certain penalties.

When the parties were unable to resolve their legal disputes voluntarily, the Court set this matter for trial. The Court conducted a site visit to 76 Andover Street, Ludlow, Vermont on the morning of the June 13, 2013 merits hearing, which was held at the Windsor Superior Court in Woodstock, Vermont.

ANR was represented at the merits hearing by John Zaikowski, Esq. and Kathryn E. Taylor, Esq., ANR staff attorneys. Respondent Robert Sanford appeared at the merits hearing pro se, and Andrea Sanford did not appear.

Based upon the evidence presented and admitted at the merits hearing, the Court renders the following factual and legal determinations, including determinations on ANR's request for imposition of penalties and other relief.

## Factual Findings

1. Respondents own a parcel of land located at 76 Andover Street in Ludlow, Vermont.

2. Jewel Brook is located adjacent to the southern border of Respondents' property.

1

3. As part of his property improvement efforts, in May 2011, Mr. Sanford directed his agent, Jim Filipowicz, to remove knot weed and other debris from Respondents' property along Jewel Brook.

4. Mr. Filipowicz used a Kubota excavator to remove the knot weed and debris, including but not limited to salvage and scrap metal.

5. Knot weed is a non-native invasive plant in Vermont. It is very difficult to eliminate once it is growing in an area.

6. The debris other than the organic material was disposed of off-site at a dump.

7. Mr. Filipowicz also installed landscaping fabric, top soil, and seed on the top of the stream bank to improve the property.

8. During Mr. Filipowicz's work, rock, stones, and soils were moved and relocated into and around the stream bank of Jewel Brook. This activity took place within the cross section of the Brook. As knot weed was removed and other debris taken out, voids and holes were created. Rock and soil from other areas were used to fill the voids and holes.

9. Mr. Filipowicz's work took one and a half to two days to complete.

10. Twenty five to thirty cubic yards of material, including but not limited to rocks, stones, and soil, were dislodged, moved, relocated, and repositioned within the stream bank, or cross section, of Jewel Brook.

11. Respondents never removed the material from the stream bank; however, they did mulch the disturbed area.

12. In August 2011, Tropical Storm Irene washed away the materials on the stream bank at issue in this matter, including rocks and soil.

13. Altering a stream's cross section presents potential for adverse risks or impacts to public health and safety by decreasing the carrying capacity of the stream and thereby increasing the chance of upstream flooding. Additionally, to the extent that shading vegetation is eliminated, it can cause an increase in water temperature and alter the chemistry of the water.

14. The following ANR officials devoted the following time, at their established hourly rates, to respond to Respondents' actions:

   a. Tim McNamara, Environmental Enforcement Officer, devoted 46.0 hours; his time is valued at $25.86 per hour.
   b. Todd Menees, Environmental Engineer, devoted 8.5 hours; his time is valued at $22.91 per hour.

**Legal Conclusions**

### I. Violations

#### a. Stream Alteration Without a Permit

ANR first alleges that Respondents violated 10 V.S.A. § 1021(a)[1] by "adding and/or moving more than 10 cubic yards of fill to the cross section of the watercourse [of Jewel Brook] without a stream alteration permit." (Administrative Order at 3, filed May 16, 2013.) At trial, Mr. Sanford claimed that his activities on May 6, 2011 did not disturb anything within the cross-section of Jewel Brook. Based on the credible testimony of ANR's witnesses, however, and the photographic exhibits provided by ANR, we find that Respondents' activities on May, 2011 caused more than 10 cubic yards of loose materials, including stones, soil, and organic matter, to be moved within the cross-section of Jewel Brook. This had the effect of altering the cross section of the brook. Accordingly, we find Respondents in violation of 10 V.S.A. § 1021(a).

#### b. Discharge Into Waters of the State Without A Permit

ANR's second allegation is that Respondents violated 10 V.S.A. § 1259(a) by discharging rocks and fill into Jewel Brook." (Administrative Order at 3, filed May 16, 2013.) In relevant part, 10 V.S.A. § 1259(a) provides that "[n]o person shall discharge any waste, substance, or material into waters of the state, . . . , without first obtaining a permit for that discharge from the secretary." The definition of "discharge" encompasses both direct and indirect discharge of materials into state waters, which include all rivers, streams, creeks, and brooks in Vermont. See 10 V.S.A. § 1251(3), (13). ANR's witnesses credibly testified that the composition of the materials on the banks of Jewel Brook after Respondents' activities was not appropriate for stream bank fill, and photographic exhibits show that much of the material was washed away after Tropical Storm Irene. By altering the cross section of the brook through the movement of materials on the banks of the brook, Respondents indirectly caused the discharge of those

---

[1] 10 V.S.A. § 1021(a) provides that "[a] person shall not change, alter, or modify the course, current, or cross section of any watercourse or of designated outstanding resource waters, within or along the boundaries of this state either by movement, fill, or by excavation of ten cubic yards or more in any year, unless authorized by the secretary."

3

materials into the waters of Jewel Brook.[2]  Accordingly, we find Respondents in violation of 10 V.S.A. § 1259(a).

## II. Penalty Assessment

When this Court determines that an environmental violation alleged by ANR in an administrative order has occurred, we are required to "determine anew the amount of a penalty" that should be assessed against the respondent who sought to challenge the ANR order.  10 V.S.A. § 8012(b)(1), (4).  We therefore review the credible facts presented here to determine an appropriate penalty assessment, pursuant to 10 V.S.A. § 8010(b)(1)–(8).

**Subsection (1)**:  Respondents' disregard for 10 V.S.A. §§ 1021(a) and 1259(a) had potential adverse impacts on public health, safety, welfare, and the environment, given the amount of material ultimately discharged downstream.  To discourage Respondents from undertaking future violations, we impose a penalty of $3,000.  We conclude that such a penalty is warranted given that Respondents' failed to fully cooperate with ANR to understand and carry out corrective measures to avoid the discharge.  However, we decline to impose a more significant penalty under this subsection, since actual impacts were not demonstrated by the evidence presented at trial.

**Subsection (2)**:  There was no evidence presented of mitigating factors favoring Respondent Sanford or disfavoring the timeliness of ANR's action.  We therefore assess no penalty or credit in light of this factor.

**Subsection (3)**:  The credible evidence shows that Respondents did not have knowledge of 10 V.S.A. §§ 1021(a) and 1259(a).  For this reason, we decline to assess any additional penalty.

**Subsection (4)**:  The record presented does not show that Respondents had previously violated ANR's regulations.  For this reason, we decline to assess any additional penalty.

**Subsection (5)**:  This subsection has been repealed.

**Subsection (6)**:  In reviewing the importance of establishing a penalty that will have a deterrent effect upon Respondent Sanford, we note that Respondent Sanford testified to his respect for Vermont's streams and rivers and desire to reduce the problem of invasive species such as knot weed.  We therefore see no need to impose an additional penalty and hope and expect that the penalty itself will be deterrent for Respondents to avoid future violations.

---

[2]  We note that ANR offered no evidence that Respondents <u>intended</u> to cause such a discharge.   There is, however, "no requirement that the State prove intent to establish a violation of § 1259." <u>Sec'y v. Irish</u>, 169 Vt. 407, 416 (1999).

4

**Subsection (7)**:  The value of the time that all ANR officials committed to responding to Respondent Sanford's violations, including prosecution of this current violation, totals just under $1,385.  We direct Respondents to reimburse these costs as an additional penalty for his violations.

**Subsection (8)**:  At the time of trial, the credible evidence revealed that Respondent Sanford took steps to remedy his violation, including mulching the disturbed area of the stream bank.  Although ANR disputes that Respondents' efforts were sufficient, we impose no additional penalty.

## Conclusion

For the reasons stated above, we conclude that Respondents Robert and Andrea Sanford shall be liable for a total penalty in these proceedings of **$ 4,385.00**.

## Rights of Appeal (10 V.S.A. § 8012(c)(4) and (5))

**WARNING:** This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received.  All parties to this proceeding have a right to appeal this Decision and Judgment Order.  The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in the Vermont Rules for Environmental Court Proceedings (V.R.E.C.P.) 4(d)(6).  Within 10 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee.  Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276.  An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court.  10 V.S.A. § 8013(d).  A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.

A Judgment Order accompanies this Decision.  This concludes the current proceedings before this Court in this enforcement action.

Done at Berlin, Vermont this 2nd day of July, 2013.

_____
Thomas G. Walsh, Environmental Judge