### Vermont Agency of Natural Resources v. Carroll Duranleau and Duranleau Construction, Inc.

[617 A.2d 143]

No. 91-350

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed September 18, 1992

*Jack Long*, Waterbury, for Plaintiff-Appellee.

*Joseph P. Palmisano* and *Samuel C. Palmisano* (On the Brief) of *Joseph C. Palmisano Associates*, Barre, for Defendants-Appellants.

**Gibson, J.** Defendants Duranleau Construction, Inc., and Carroll Duranleau, its president, appeal an Environmental Law Division (ELD) order denying their motion to dismiss and assessing a $10,101 penalty for violation of 10 V.S.A. § 6081. The Vermont Agency of Natural Resources cross-appeals the ELD order. We affirm.

## I.

In the summer of 1990, heavy flooding damaged several roads in the Town of Washington. The town applied to the Federal Emergency Management Agency (FEMA) for grants to repair the damaged roads. Defendant, Carroll Duranleau, in his capacity as town selectman, inspected the roads with a representative of FEMA, another selectman and the town road commissioner. The town received the grants in September 1990.

Defendants had planned to blast an area at their 2.3-acre business site in the Town of Washington to create extra parking and storage facilities. They offered to supply the town with "plant mix" from rock to be blasted at the site. Clearing and excavation of the site began on October 5, 1990, and on October 16, the board of selectmen voted to purchase plant mix from defendant. On October 25, the district coordinator of the District Five Environmental Commission notified defendants that the work occurring at the site might require an Act 250 permit. On October 31, the coordinator wrote a letter to defendants stating his preliminary conclusion that the activity at the site was a commercial project subject to Act 250 and that he would be issuing a formal advisory opinion. He requested a response by November 9. Defendants did not respond, and the coordinator issued a formal opinion on November 28 concluding that the activities required an Act 250 permit. On November 30, the ELD entered an emergency order halting work at the site.

On February 12, 1991, the agency issued an administrative order which required defendants to pay $7,250 for alleged violations. Defendants requested a hearing before the ELD, and moved to dismiss the action, in effect requesting reversal of the administrative order as a matter of law. The ELD denied the motion, and after a hearing on the merits, concluded that defendants had violated 10 V.S.A. § 6081(a) and ordered them to pay a penalty of $10,101.

Defendants argue that (1) the administrative order should have been dismissed because state law is preempted by the federal Disaster Relief Act; (2) the work at the site was not done for a commercial purpose and thus did not require an Act 250 permit; and (3) the ELD abused its discretion in imposing a larger penalty than was initially ordered by the agency.

On cross-appeal, the agency contends that the ELD abused its discretion (1) by not imposing separate penalties for deterrence, and for potential and actual impact on the environment, public welfare and safety, and (2) by improperly mitigating the penalty.

## II.

■ Defendants argue that the administrative order should have been dismissed under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, § 2. Relying on the federal preference for local procurement in carrying out disaster relief activities, 42 U.S.C. § 5150, defendants claim that the work could be done without an Act 250 permit because it was necessary to accomplish a project administered by FEMA.

■ State law may run afoul of the Supremacy Clause in two ways: the law may regulate the federal government directly or discriminate against it, or the law may conflict with an affirmative command of Congress. *North Dakota v. United States*, 495 U.S. 423, 433–34 (1990). There is no claim in this case that Vermont attempted to regulate the federal government directly; rather, the state imposed permit requirements upon a local supplier of crushed stone. Nor do the requirements of Act 250 discriminate against the federal government, or those with whom it deals, because they apply to all suppliers of crushed stone in Vermont. Finally, there is no conflict with federal law, as the language of the Disaster Relief Act expressly encourages the

states to develop land use and construction regulations. 42 U.S.C. § 5121(b)(5). Thus, there was no preemption of state law by the federal Disaster Relief Act.

## III.

Defendants contend that they did not violate Act 250 because they had not "commenced development" without a permit. Act 250 defines "development" as "the construction of improvements for commercial or industrial purposes on more than one acre of land within a municipality which has not adopted permanent zoning and subdivision bylaws." 10 V.S.A. § 6001(3).

Corporate defendant quarried rock and enlarged its business area on a 2.3-acre site in the Town of Washington, which has not adopted permanent subdivision bylaws. Defendants argue, however, that their activities were not undertaken for a commercial purpose but were undertaken for the benefit of the municipality and therefore did not fall within the jurisdiction of Act 250. In support of their argument, defendants cite Environmental Board Rule 2(L), which defines "commercial purpose" as "the provision of facilities, goods or services by a person other than for a municipal or state purpose to others in exchange for payment of a purchase price, fee, contribution, donation or other object having value." Additionally, Rule 2(E) defines "municipal purpose" as "projects which are undertaken by or for the ... municipality and which are to be used by the ... municipality, or members of the general public."

Environmental Board interpretations of Act 250 and of its own rules are given a high level of deference by this Court, *In re Vitale*, 151 Vt. 580, 582–83, 563 A.2d 613, 615 (1989), and absent compelling indications of error, will be sustained on appeal. *In re Capital Investment, Inc.*, 150 Vt. 478, 482, 554 A.2d 662, 665 (1988). Defendants operate a commercial business, and they also received revenue from the sale of their crushed rock. Although the crushed rock was eventually used in a municipal road repair project, defendants' activities primarily served a separate commercial purpose of their own, namely, the enlargement of their business site and the realization of revenues for the business. The municipal purpose was collateral to their private commercial purpose. Inasmuch as their activities at the

site were for a private commercial purpose, defendants were required to obtain Act 250 approval.

## IV.

■ Defendants also argue that the ELD abused its discretion by allowing the agency to seek a higher penalty than the agency itself had imposed, and by imposing a larger penalty than had been assessed by the agency. The hearing provided for in 10 V.S.A. § 8012 is a de novo evidentiary hearing before the ELD. See 10 V.S.A. § 8013(a),(b); V.R.C.P. 76(d)(2). The Secretary of the Agency of Natural Resources bears the burden of proof by a preponderance of the evidence, *id.* § 8013(a), and the ELD must issue written findings of facts and conclusions of law. *Id.* § 8012(c)(1). V.R.C.P. 76(d)(2) also provides that "[r]eview shall be de novo." The ELD must determine whether a violation has occurred, and may affirm, modify, remand or reverse the Secretary's administrative order. 10 V.S.A. § 8012(b)(1)-(3). In addition, it has authority to "review and *determine anew* the amount of [any] penalty." *Id.* § 8012(b)(4) (emphasis added). Because the ELD may "determine anew" the penalty, it was within its discretion to impose a larger penalty than initially assessed in the administrative order.

Defendants contend that, by receiving a larger penalty, they are being punished for exercising their right to appeal. They argue that there is a strong public policy against imposing a heavier penalty on one who obtains a trial de novo, citing *Blackledge v. Perry*, 417 U.S. 21 (1974). *Blackledge* was a criminal case in which the defendant had been charged with and convicted of a misdemeanor in the district court. The defendant exercised his right to appeal, and to have a trial de novo in the superior court. The prosecutor subsequently charged the defendant with a felony and obtained a conviction for the higher offense. The United States Supreme Court held that "[a] person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.* at 28.

*Blackledge*, however, does not foreclose the possibility that a higher penalty may be imposed upon reconviction of the same

misdemeanor offense after appeal, but only guards against "a realistic likelihood of 'vindictiveness'" on appeal through the substitution of a more serious charge for the original one. *Id.* at 27. In the present case, the agency did not "up the ante" by charging defendants with new violations. Rather, on the basis of new information obtained at subsequent hearings concerning defendants' application for an Act 250 permit, the agency asked the ELD to consider the degree of actual and potential impact on health, safety and welfare in determining the amount of the penalty. Further, the original penalty imposed by the Secretary of the agency was calculated ex parte. There was no evidentiary hearing and no opportunity to develop a complete factual record. We conclude, therefore, that, if the *Blackledge* rule applies in a civil case, here, there was no realistic likelihood of vindictiveness and no violation of defendants' due process rights.

In their reply brief, defendants contend that they were entitled to a jury trial before the ELD. This issue was never raised before the ELD nor was it argued in defendants' original brief. Accordingly, it is not properly before us for review. *In re D.B.*, 155 Vt. 580, 584, 587 A.2d 966, 968 (1991).

### V.

In its cross-appeal, the agency argues that the ELD erred in assessing a penalty based solely on the economic benefit gained from the violation. According to the agency, the ELD should have imposed additional penalties for deterrent purposes and for the creation of actual and potential adverse impacts on the environment and on public safety and welfare.

The ELD is mandated by statute to consider eight factors when assessing a penalty. 10 V.S.A. §§ 8012(b)(4), 8010(b). Section 8010(b), however, does not state that separate penalty amounts must be imposed under each factor. Instead, the statute mandates that all eight elements be considered when the court determines "the amount of the penalty." The ELD considered the various factors and determined that $10,101 was sufficient to meet the statutory goals. Thus, the ELD met the requirements of the statute. No additional penalties were required.

The agency further contends that the ELD erred in mitigating the penalty. The statute gives the ELD discretion in determining whether mitigating circumstances exist, and, if

found, how they should affect the amount of the penalty imposed. *Id.* § 8010(b)(2),(3). In assessing the mitigating factors, the court considered that, as this was the first case to have been brought under a new statute, defendants may not have known or had reason to know they were in violation during some portion of the time that they were in violation. See *id.* § 8010(b)(3). This was not an unreasonable assessment. The court's conclusion that the October 31 letter from the district coordinator to defendants advising defendants of the violation marks the date when defendants clearly knew or had reason to know that a violation existed, and the court's use of November 9, the deadline for an answer from defendants, to calculate the adjusted penalty were not clearly unreasonable. We find no abuse of discretion by the ELD.

*Affirmed.*