## Agency of Natural Resources State of Vermont v. Edward M. Godnick

[652 A.2d 988]

No. 94-057

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 21, 1994

*Jeffrey L. Amestoy*, Attorney General, and *Conrad W. Smith* and *Ron Shems*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Edward R. Seager* and *Bernard J. Boudreau* of *Edward R. Seager, P.C.*, Rutland, for Defendant-Appellant.

**Dooley, J.** Defendant Edward Godnick appeals a $10,270 penalty assessed by the Environmental Law Division (ELD) pursuant to the administrative penalty provisions of the Uniform Environmental Law Enforcement Act, 10 V.S.A. §§ 8001–8018, enacted in 1989. Plaintiff, the Vermont Agency of Natural Resources (ANR), cross-appeals, charging that the ELD failed to assess a penalty for the first year of defendant's violation and erroneously evaluated the statutory criteria in determining the penalty. We affirm the ELD's calculation of the penalty, but remand for a determination of penalties for the first year of violation.

In August of 1987, defendant purchased a parcel of land on Route 7 in Rutland for the purpose of building a furniture warehouse. The site contained a highway right-of-way held by the Vermont Agency of Transportation (AOT). Before he bought the property, defendant received a letter from the District AOT office informing him that the use of highway right-of-way on the site was subject to AOT guidelines. The letter, evidently in response to defendant's inquiry, stated that plantings in the right-of-way must not interfere with sight distances or highway maintenance activities. While pursuing his purchase of the property, defendant applied to the District I Environmental Commission (Commission) for an Act 250 land use permit to allow construction of the warehouse. The permit was granted, but it reserved the Commission's right to impose additional conditions when the buildings and grading were complete.

The completed warehouse did not conform to the plans approved by the permit. Concerned about the visual impact of the warehouse along Route 7, the Commission informed defendant that he would have to submit a revised landscaping plan to achieve the same screening results as those originally approved. Defendant submitted a revised plan, and although this plan depicted plantings in the right-of-way, it made no reference to the AOT guidelines. Defendant did not seek AOT approval until after the Commission approved the plan. On June 23, 1989, the Commission issued an amended Act 250 permit requiring defendant to make plantings which would screen the visibility of the warehouse from the highway, and set October 1, 1989, as the deadline for implementing the plan.

When AOT received the revised plan in the amended Act 250 permit, it instructed defendant not to plant within the right-of-way without its approval and notified the Commission of the conflict. Defendant tried to arrange a meeting in which AOT and the Coordinator of the District Commission could discuss the conflict, but the Coordinator was unable to attend. On September 27, 1989, AOT sent defendant a letter stating that the landscaping plan must be redesigned to meet AOT's highway right-of-way guidelines.

Despite the October 1, 1989 deadline for implementing the landscaping plan, this AOT letter marks the last time that defendant communicated with either the Commission or AOT until June of 1992, when the ANR initiated enforcement action against him. Between October 2, 1989 and October 14, 1992, a period of three years, defendant did no landscaping on the site except to plant grass. Finally, in 1992, defendant submitted an application for a further amendment

to address the landscaping concerns of the District Commission within AOT requirements. This application was approved by both AOT and the Commission. The Commission issued the further amended permit on October 14, 1992, and, consequently, defendant was in compliance on that date. During the following month, defendant completed the required landscaping at a cost of $10,000.

In December of 1992, the Secretary of the Vermont Agency of Natural Resources issued an administrative order pursuant to 10 V.S.A. §§ 8008 and 8010 imposing penalties for violations of the amended permit between October 2, 1989 and October 14, 1992. Defendant appealed the administrative order to the ELD. Although the ELD concluded that defendant was in violation during the three-year period, it imposed a penalty for only the last year of violation calculated to equal the amount of economic benefit defendant gained.

On appeal, defendant argues that the ANR is estopped from issuing an administrative order, and that the ELD erred in its assessment of penalties against defendant. On cross-appeal, ANR argues that the ELD's assessment of penalties was improper because it failed to impose penalties for the first year of violation, and failed to apply the penalty criteria of the statute. We consider first defendant's estoppel argument, and then will review the ELD's calculation of the penalty.

Defendant argues that the Secretary is estopped from issuing the administrative order because defendant's noncompliance stemmed directly from the conflicting directions of the Commission and AOT, and that the Commission never advised him of his obligation to resolve this conflict. Defendant argues that the Commission's silence about the conflict implied that it would resolve the problem with AOT and would so notify defendant. We affirm the conclusion of the environmental law judge that estoppel is inappropriate in this case.

The doctrine of equitable estoppel "is based upon the grounds of public policy, fair dealing, good faith, and justice." *Dutch Hill Inn, Inc. v. Patten*, 131 Vt. 187, 193, 303 A.2d 811, 815 (1973). The party asserting estoppel has the burden of establishing: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon, or the conduct must be such that the party asserting estoppel has a right to believe it is intended to be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped. *Fisher*

*v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 411–12 (1982). Estoppel against the government is rare; it is appropriate only when the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case. *In re McDonald's Corp.*, 146 Vt. 380, 383, 505 A.2d 1202, 1203-04 (1985).

The ELD found that defendant failed to meet the third element of estoppel, and we agree. Defendant knew that he faced an October 1, 1989 deadline and that the conflict between permit requirements and those of AOT were not resolved as of that date. The question of who had to resolve the conflict is not a "fact" for purposes of the estoppel elements. See *In re Conway*, 152 Vt. 526, 531, 567 A.2d 1145, 1147 (1989) (no estoppel where Act 250 applicants knew that they had to give notice to all adjoining property owners, but failed to do so, allegedly relying upon the District Coordinator's advice that such notice was not required). Thus, defendant was cognizant of the true facts.

We also emphasize that consistent with the requirement of good faith, estoppel will not be invoked in favor of a party "'whose own omissions or inadvertence contributed to the problem.'" *Id.* (quoting *Town of Bennington v. Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 288, 294, 427 A.2d 365, 369 (1981)). Defendant's nonfeasance contributed significantly to the prolonged period of noncompliance. Defendant took no action to develop a landscaping plan which would satisfy the requirements of both the Commission and AOT. By doing nothing to resolve the conflict, defendant remained in noncompliance for three years despite his obligation to ensure that his project complied with all relevant regulations. Defendant failed to act in good faith, and estoppel, an equitable remedy, is inappropriate in such circumstances.

Both parties contest the civil penalty imposed by the ELD, but for different reasons. The ELD concluded that defendant violated Act 250 during the three-year period between October 2, 1989 and October 14, 1992. It assessed a penalty of $10,270, representing economic gain for one year of the three-year violation. It decided not to impose any penalty under 10 V.S.A. § 8010 for violations which occurred before the statute took effect, and for the approximately eleven-month period after November 2, 1990, when the Secretary failed to pursue the violation, concluding this delay in enforcement was so unreasonable that full mitigation of the penalty for that period

was warranted. On appeal, defendant argues that it was error for the ELD to assess any penalty. Conversely, on cross-appeal, ANR contends that it was error for the ELD not to apply administrative penalty provisions retrospectively, that the ELD erred in concluding that the delay was unreasonable and in completely mitigating the penalty during this period, and that the ELD failed to make specific findings on all the statutory penalty criteria of § 8010(b).

We begin with the challenge to the failure to impose a penalty for the first year of violation. ELD concluded that the imposition of administrative penalties for this year constituted an impermissible retrospective application of 10 V.S.A. §§ 8008 and 8010 because the Secretary's power to determine penalties did not arise until November 2, 1990, when the environmental law judge was appointed. See 1989, No. 98, § 6 (provisions of Uniform Environmental Law Enforcement Act authorizing Secretary to assess penalties "shall not take effect until the rules required by section 8016 of Title 10 have been adopted and an environmental law judge has been appointed").

■ In reviewing this determination, we emphasize three points about the statutory scheme. First, the Uniform Environmental Law Enforcement Act was effective on July 1, 1989 although certain sections had delayed effective dates. Section 8008 states that "[t]he secretary may issue an administrative order when the secretary determines that a violation exists," 10 V.S.A. § 8008(a), and § 8010(a) provides that "[a]n administrative penalty may be included in an administrative order issued under section 8008 of this title." 10 V.S.A § 8010. Although the delayed effective date of these sections precluded the Secretary from *issuing* administrative orders and imposing penalties prior to the effective date, nothing in the language suggests that the Secretary was completely precluded from administratively enforcing any violations which occurred before this time.

Second, we are dealing here with the ELD's power to impose a penalty under § 8012(b)(4), a section which did not have a delayed effective date. Third, the alternative choice for imposition of civil penalties was an independent action in superior court. 10 V.S.A. § 8221. The Uniform Environmental Law Enforcement Act increases civil penalties and requires the superior court to use the penalty assessment factors of § 8010. Section 8221 did not have a delayed effective date.

We agree that Vermont statutory law and case law normally prohibit retrospective application of new and amended statutes. *State v. Willis*, 145 Vt. 459, 466, 494 A.2d 108, 112 (1985); 1 V.S.A. §§ 213,

214. Retrospective laws are defined as "'those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past.'" *Carpenter v. Vermont Department of Motor Vehicles*, 143 Vt. 329, 333, 465 A.2d 1379, 1382 (1983) (quoting *Barbieri v. Morris*, 315 S.W.2d 711, 714 (Mo. 1958)). A statute is not retrospective, however, when it merely relates to prior facts or transactions but does not change their legal effect. *Id.*

*Carpenter* is instructive because the issue was similar. A Vermont statute imposes a license suspension sanction for failure to submit to an alcohol breath test when requested; the length of the suspension increases if there have been past refusals. The plaintiff in *Carpenter* faced a six-year suspension for a third refusal and argued that the earlier refusals could not be considered because they occurred before the effective date of the statute increasing the period of the license suspension when there have been past refusals. Applying the definition stated above, we disagreed that the statute was being applied retrospectively or retroactively because the triggering event occurred after the new statute was effective. *Id.*; see also *Erno v. Commissioner of Motor Vehicles*, 156 Vt. 62, 65–66, 587 A.2d 409, 412 (1991) (statutory amendment had no impact on prior conviction absent a new action which triggered the new rule).

Here, the violation went beyond the period in issue so there is no question that the Secretary could impose penalties under § 8010 and that the ELD could order penalties under § 8012(b)(4). The sole question is the amount of the penalties. As in *Carpenter*, we do not believe it is improper to consider past conduct in determining the extent of the violation.

Further, the issue is not whether defendant would escape penalties for the year in question, but how those penalties will be imposed and enforced. The Secretary could have brought an action in superior court for civil penalties under § 8221, and the superior court would have used the identical factors in computing the civil penalty. In fact, the maximum amounts allowed in an administrative penalty are less than those that could be imposed by the superior court. Compare 10 V.S.A. § 8010(c) ($25,000 penalty for each violation) with *id.* § 8221(b)(6) ($50,000 penalty for each violation). Thus, defendant had fair notice that the violations would be subject to enforcement under the Act; the differences in method of enforcement are basically procedural. Statutory changes that are procedural in nature, as

opposed to those that affect preexisting rights and obligations, may be applied retrospectively. *Myott v. Myott*, 149 Vt. 573, 575–76, 547 A.2d 1336, 1338 (1988). The administrative scheme involved here imposes no new liability on defendant. Enforcement efficiency may have improved under an improved procedural framework, but defendant has no preexisting right in a less efficient enforcement scheme as long as the same substantive standards are used.

■ Finally, we think the ELD decision leads to an unreasonable result unintended by the Legislature. See *Vermont Agency of Natural Resources v. Riendeau*, 157 Vt. 615, 620, 603 A.2d 360, 362–63 (1991) (Court will construe statue to avoid unreasonable result). Under the ELD's construction, the Secretary is required to bring an action in superior court for the first year of violation, but may issue an administrative order imposing administrative penalties for the subsequent two years of violation. Severing prosecution of the first year of violation from the second and third would result in the inefficient duplication of adjudication by the superior court and the ELD. It would also be unreasonable to require defendant and the State to bear the costs of litigating different periods of a continuous violation in two different courts.

The remaining issues deal with the ELD's application of the criteria for determining the amount of penalties set forth in § 8010(b) to this case. Defendant argues that the ELD erred in imposing any penalty given mitigating circumstances. In the alternative, he argues that the ELD erred in calculating the amount of economic benefit gained from the violation. On cross-appeal, ANR contends that it was error to mitigate the penalty for the last year because any delay in enforcement was not unreasonable. In addition, ANR argues that the ELD erred in failing to apply all eight of the penalty criteria of § 8010 and, in particular, the need for deterrence. Because these issues will recur on remand, we consider them.

The ELD has the authority to determine whether a violation occurred and to review and completely redetermine the amount of any penalty. 10 V.S.A. § 8012(b)(1), (4). The Act lists eight factors that the ELD must consider in determining the amount of the penalty, 10 V.S.A. § 8010(b), but it does not require that separate amounts be imposed under each factor. *Vermont Agency of Natural Resources v. Duranleau*, 159 Vt. 233, 239, 617 A.2d 143, 147 (1992).

■ One of the factors the ELD must consider in assessing a penalty is "the presence of mitigating circumstances, including un-

reasonable delay by the secretary in seeking enforcement." 10 V.S.A. § 8010(b)(2). Although defendant was in violation of his permit as of October 1, 1989, the District Coordinator did not pursue voluntary compliance efforts, and the initial enforcement order was not issued until June of 1992. The ELD concluded that "the Secretary's refraining from issuing an order in the planting season of 1991 was an unreasonable delay," which required mitigation of the penalty for that period. On the other hand, the ELD found that defendant's failure to develop a plan that would have satisfied both agencies or to begin the landscaping outside the right-of-way precluded a finding of attempted compliance as a further mitigating factor.

The findings are not clearly erroneous and do support the ELD's conclusions regarding mitigating factors. The Act provides the ELD with the discretion to determine how any mitigating circumstances found should affect the amount of the penalty imposed as long as its assessment is not unreasonable. *Duranleau*, 159 Vt. at 239–40, 617 A.2d at 147. Accordingly, defendant's argument that the ELD failed to adequately consider mitigating factors is unavailing. Moreover, we do not agree with ANR's contention on cross-appeal that the ELD abused its discretion in applying the mitigating circumstances factor to eliminate penalties for eleven months of unreasonable delay.

■ ■ Another penalty criteria the ELD must consider is the economic benefit gained from the violation. 10 V.S.A. § 8010(b)(5). Defendant argues that he received no economic benefit from the use of the warehouse while he was in noncompliance. The ELD found that defendant received two types of economic benefit from the violation. He leased warehouse space to another business he owned and received $9,070 in rental income; and he gained $1,200 by waiting until 1992 to complete $10,000 worth of landscaping. Both of these items were supported by the evidence. Although the rent was paid from one of defendant's businesses to another, equivalent warehouse space in the area would have cost $9,000, and therefore defendant saved this amount by not paying elsewhere for warehouse space. As a direct result of his noncompliance, defendant had the use of monies which should have been spent on landscaping in 1989. The ELD used a 12% interest rate over a one-year period to estimate defendant's avoided cost. We agree this was a reasonable measure of defendant's additional economic benefit gained from noncompliance. Cf. 9 V.S.A. § 41a(a) (setting 12% per annum as the statutory legal rate of prejudgment interest).

■ The ELD must consider all of the statutory criteria in calculating a penalty. 10 V.S.A. §§ 8012(b)(4) and 8010(b). On cross-appeal, ANR contends that the ELD calculated the penalty based only on economic benefit, and wholly ignored the deterrence requirement. The ELD decision discussed all factors in assessing a penalty. Regarding deterrence, the ELD found that even in the absence of lasting environmental or public harm, the need to deter noncompliance demanded the imposition of a monetary penalty against defendant. It did not impose an added amount specifically for deterrence. We believe this analysis is within ELD's broad discretion in fashioning an appropriate sanction.

*The decision of the Environmental Law Division that a violation of defendant's permit occurred is affirmed. The civil penalty determination is reversed and remanded for proceedings not inconsistent with this opinion.*