STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Hector J. LeClair        }
                                          }
                                          }    Docket No.  62-5-01 Vtec
                                          }
                                          }

Decision and Order on Town= s Motion for Summary Judgment

Appellant Hector J. LeClair appealed from the March 28, 2001 decision of the Development Review Board (DRB) of the Town of Williston granting a phasing allocation for the final twelve residential units of an already-approved subdivision application. Appellant is represented by Steven J. Kantor, Esq.; the Town is represented by Paul S. Gillies, Esq. Interested persons Tyler Dawson and Randall Kimball are represented by Robert J. Perry, Esq. but have not participated in the briefing of this motion.

The Town= s motion addresses Questions 2 and 3 of Appellant= s Statement of Questions: whether Appellant acquired a right to a particular building permit phasing allocation or otherwise received the Planning Commission= s A approval@ prior to the March 2001 decision; and whether the Town validly enacted its 1998 phasing allocation rating system.

The following facts are undisputed unless otherwise noted.

Appellant received a subdivision permit in February 1995 for a 35-lot subdivision including 31 residential lots. That permit was not appealed and became final. One condition of that permit was that:

Construction phasing is approved at fifteen (15) residential dwellings per fiscal year with construction capped at nineteen (19) dwellings. Due to the current elementary school overcrowding situation, the permittee shall seek Planning Commission approval prior to the issuance of a building permit for any of the remaining twelve (12) residential units.

Appellant remains entitled to the benefit of his 1995 subdivision permit. The only issue before the court in the present appeal relates to the phasing of the remaining twelve units.

A March 1995 A Phasing Recommendations@ report by then-Town Planner David Spitz recognized that school congestion A continues to be a primary concern@ and recommends that the number of schoolchildren from new housing units should be restricted for at least two years. In addressing several specific projects, the report recommends a phasing schedule for the final twelve LeClair units at the rate of four units per year beginning with the 1997-98 fiscal year. Appellant received a copy of the report.

On January 4, 1996, Appellant wrote a letter to Town Planner Spitz, stating in full as follows:

YOUR PHASING LETTER OF 3/21/95 OF MY 12 ALREADY APPROVE[D] HOUSE LOTS. I WOULD LIKE TO REQUEST A LETTER OF ASSURANCE THAT I CAN START BUILDING ON FOUR(4) LOTS PER YEAR STARTING IN YEAR 1997 UNTIL PROJECT IS COMPLETED.

Appellant did not file any request at that time with the then-Planning Commission. No Town official ever replied to this request.

The 1998 Williston Annual Growth Report published by the Town included in Table 2, A Anticipated Residential Buildout,@ those residential projects A already approved with required or anticipated phasing.@ Appellant= s project is listed as A H. LeClair (19 + 12).@ Entries for that project show 2 permits issued in the 1997-98 fiscal year; 10 as A built/permitted to date;@ an entry of "na[1]" under A remaining allocated;@ 4 per year for each of the five years from 1998-99 to 2002-03 under the heading of A estimated permits (including recommended new allocations);@ and no units as A phased for following years.@

Accordingly, as of some time in 1998, the status of Appellant= s remaining units[2] was that they had not yet been allocated, but were anticipated to be allocated at a rate of four per year for each of the next five years. There is no indication that Appellant sought approval of any allocations in 1998.

In late 1998, the Town adopted amendments to its subdivision ordinance regarding phasing allocations; the amendments took effect on January 11, 1999. The notice for the public hearing on the ordinance amendments before the Selectboard, stated in error that the hearing would be before the Planning Commission. It was in fact held before the Selectboard.

There is no indication that Appellant sought approval of any allocations in 1999.

In August 2000, Appellant= s engineer wrote a letter to Town Planner Michael Munson, laying out the history described above. The letter noted that, A following the adoption of the most recent phasing guidelines, all projects that had received at least conceptual approval were to be evaluated by the Design[3] Review Board for determination of the appropriate schedule,@ and stated that A Mr. LeClair was never notified that his project was eligible assuming that he would be subjected to that process.@ The letter asked for the Town Planner= s A assistance in this matter.@ This letter suggests that Appellant and his engineer thought that the project was subject to the new phasing regulations, and were merely seeking to be included with other projects in the DRB= s then-current consideration for a phasing schedule.

Mr. Munson replied by letter dated September 1, 2000, that the former Planning Commission had never acted on any phasing recommendation for the last twelve units of the LeClair development and that Mr. LeClair= s January 4, 1996 letter A cannot be construed as a request to the Planning Commission for a phasing allocation.@ The letter stated that Appellant should submit a letter requesting consideration of the remaining twelve units during the Board= s A next annual phasing allocation.@ The letter stated that it was a decision of the Zoning Administrator that could be appealed to the Development Review Board. Appellant did not appeal the Town Planner= s opinion letter.

No documents reflecting an application were filed by either party, but Appellant and his engineer appeared at a February 27, 2001 hearing of the DRB and requested A phasing that was consistent with what had been in the pipeline for six years. This was four units per year.@ The DRB in its A 2001 Residential Growth Management phasing allocations@ on March 27, 2001 granted a phasing allocation to Appellant for the final twelve lots in his project at the rate of four units per fiscal year beginning in the 2005-06 fiscal year. Appellant appealed from this decision in the present appeal.

The Town seeks summary judgment on Question 3, whether the Town validly enacted its phasing allocation rating system. Under 24 V.S.A. ' 4494(b), A [n]o person shall challenge for purported procedural defects the validity of any plan or bylaw as adopted, amended or repealed under this chapter after two years following the day on which it would have taken effect if no defect had

occurred.@ Appellant= s Notice of Appeal was filed on May 9, 2001. The alleged defect is procedural in nature and Appellant= s challenge is outside the two-year limitations period. Accordingly, the Town= s Motion for Summary Judgment is GRANTED on Question 3.

Question 2 is whether A Appellant= s requested building permit phasing allocation should be granted by virtue of its previous acceptance by the Town of Williston prior to the adoption of the Williston phasing allocation rating system.@ Appellant argues the condition regarding construction on the final twelve lots was limited in the 1995 subdivision permit only due to school overcrowding, and merely required a request for approval when the overcrowding subsided. Appellant argues that the Town should be equitably estopped now from postponing his phasing allocation to begin in July 2005.

Appellant is correct that he holds a final unappealed subdivision permit approving the lots in question, and is equally correct that the permit= s condition was linked to the issue of school crowding. Appellant would have been entitled to consideration of his remaining twelve units under the rules applicable prior to the 1999 allocation amendments, had he made application for such allocations prior to that time. However, Town Planner Munson was correct in his September 2000 ruling that Appellant= s 1996 two-sentence letter to the former Town Planner cannot be construed as having been an application to the then-Planning Commission for the unallocated building permits. Further, Appellant did not appeal the September 2000 ruling to the DRB.

Under the circumstances of this case, the doctrine of equitable estoppel is inapplicable. Appellant simply did not make the required application to the Planning Commission, nor did he appeal the Town Planner= s 1990 opinion that he still needed to do so. Ordinarily, a claim for equitable estoppel requires the establishment of four elements:

(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon, or the conduct must be such that the party asserting estoppel has a right to believe it is intended to be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped.

In re Letourneau, 168 Vt. 539, 547 (1998); Agency of Natural Resources v. Godnick, 162 Vt. 588, 592 (1994). Even without regard to the fact that estoppels against the government are rare and are to be invoked only in extraordinary circumstances, In re McDonald's Corp., 146 Vt. 380, 383 (1985), the elements of estoppel are not found in the present case. Appellant= s 1995 permit condition required him to apply to the Planning Commission for approval of the remaining twelve units. No action of a Town representative misled Appellant into thinking that the condition had been met. Nor was Appellant ignorant of the true facts, as he ultimately did apply in 2001.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town= s Motion for Summary Judgment is GRANTED as to Questions 2 and 3. We will hold a telephone conference on January 4, 2002 to determine how the parties wish to proceed on the remaining question.

Done at Barre, Vermont, this 19th day of December, 2001.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

1. While 'n/a' usually means "not applicable," no key is provided in the document and it could equally mean "none allocated."

2. Apparently eight more than the twelve at issue in the present appeal, for a total of twenty remaining units.

3. Probably intended to refer to the "Development" Review Board.