STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 123-10-15 Vtec

| Leverenz Act 250 Jurisdictional Opinion (#6-010) | DECISION ON MOTION |

Keith and Patricia Leverenz ("Appellants") appeal a jurisdictional opinion from the Vermont Natural Resources Board ("NRB") that a proposed four-lot subdivision on their property in North Hero, Vermont would require an amendment to a 1993 Act 250 permit issued to the previous owners of the land for a horse exhibition ring.  Now before the Court are Appellants' motion for summary judgment and NRB's cross-motion for summary judgment.

The central question raised by both motions is whether Act 250 jurisdiction continues on the subject property, even though the 1993 land use permit had a term of ten years.  The NRB argues that, contrary to the ten-year term specified in the 1993 permit, the permit and Act jurisdiction over the property continues indefinitely, due to a legislative change that retroactively extended the term of previously-issued permits.

Appellants argue that (1) the permit issued in 1993 was only to last for a period of 10 years, and to extend the permit expiration date indefinitely would be an impermissible retroactive application of the 1994 Amendments to Act 250; (2) the permit has expired because there has been no compliance with the permit terms since the horse exhibitions ceased to operate well prior to 2003, thus terminating Act 250 jurisdiction; and (3) a four-lot residential subdivision does not, in and of itself, trigger Act 250 jurisdiction, is a new and distinct use of the land wholly independent of the 1993 permit, and is thus not a material change requiring an Act 250 permit application.  The NRB argues that amendments to Act 250 passed by the Legislature in 1994 extended the expiration dates of all permits indefinitely, and therefore jurisdiction under the 1993 permit continues indefinitely.  Because jurisdiction continues, NRB argues, the proposed subdivision constitutes a material change to the use of the land permitted in the 1993 permit and therefore requires an Act 250 permit amendment.

Appellants are represented by attorneys Austin D. Hart and Justin B. Barnard. The NRB is represented by attorney Peter J. Gill.

**Factual Background**

Solely for the purposes of deciding the pending motions for summary judgment, we recite the following facts, which we understand to be undisputed unless otherwise noted.

1.    Appellants own a parcel of land in North Hero, Vermont ("the Property").

2.    Appellants propose to subdivide the Property into four lots.

3.    In 1993, the previous owners of the Property obtained an Act 250 permit ("the 1993 Permit") to operate a seasonal horse exhibition, including a parking area, riding ring, tent, barn, ticket booth, and bleachers.[1]

4.    The 1993 permit required that the project be "completed, operated, and maintained in accordance with" the plans, exhibits, and conditions approved by the District Environmental Commission #6 ("District Commission"). 1993 Permit at 1, ¶ 1.

5.    Those conditions and plans authorized temporary seasonal structures, all of which were to be removed each fall. Any further development or subdivision of the Property would require prior "written approval of the District Environmental Commission." Id. at 2, ¶ 14.

6.    Under the terms of the 1993 permit, the permit was scheduled to expire on October 1, 2003, unless extended by the District Commission. Id. at 3, ¶ 15.

7.    Under the terms of the 1993 permit, "[t]he District Environmental Commission maintains continuing jurisdiction during the lifetime of the permit." Id. at 1, ¶ 3.

8.    In 1994, the Vermont Legislature enacted certain amendments to Act 250, including a provision that provided that "[e]xpiration dates contained in permits issued before July 1, 1994 (involving developments that are not for extraction of mineral resources, operation of solid waste disposal facilities, or logging above 2,500 feet) are extended for an indefinite term, as long as there is compliance with the conditions of the permits." 1994, No. 232, § 35, codified at 10 V.S.A. § 6090(b)(2).

---

[1]  A copy of the 1993 Permit is attached as Exhibit A to the parties' Joint Stipulations of Fact.

9.      Consistent with the 1993 Permit, the Property was used for horse shows between 1993 and sometime before 2003. The former owners did not seek a permit renewal, and they discontinued their horse exhibitions prior to October 1, 2003.

10.      There has been no commercial activity (equestrian or otherwise) on the Property since prior to October 1, 2003, and the site has not been maintained to the standards of the 1993 Permit. At the same time, there has been no evidence presented that the conditions set out in the 1993 Permit have been violated in any way.

11.      All of the permitted structures have been removed from the property. The only remaining improvements are a rough driveway (pre-dating the 1993 permit), power lines, two telephone poles, and a capped well.[2]

12.      To the best of the parties' knowledge, there are no residual impacts from the horse exhibition use that require either remediation or monitoring.

13.      Appellants purchased the Property in 1998, with the intent to subdivide the property into four lots. Appellants plan to use three lots as home sites, and leave the fourth undeveloped.

14.      Appellants currently use the Property as a hay field (they allow their neighbor to hay the property without charge).

15.      On May 1, 2015, Appellants sought a jurisdictional opinion from the District Environmental Commission #6 District Coordinator ("District Coordinator") about whether their proposed four-lot subdivision would require an Act 250 permit. A copy of their attorney's letter, requesting the jurisdictional opinion, is attached as Exhibit E to the parties' Joint Stipulations of Fact.

16.      The District Coordinator asserted Act 250 jurisdiction over the property, reasoning that, though a four-lot subdivision would not independently trigger Act 250 jurisdiction, jurisdiction under the 1993 permit was ongoing pursuant to 10 V.S.A. § 6090(b), despite the expiration date in the 1993 Permit, and that the proposed residential subdivision would constitute a material change to the permitted use and therefore require a permit amendment. A copy of the District

---

[2] Attached as Exhibit D to the parties' Joint Stipulation of Facts are multiple photographs of the Property and a statement by Ms. Leverenz of what the photographs depict; the photographs evidence the removal of all site improvements, save for the rough driveway, power lines, two telephone poles, and a capped well.

Coordinator's responsive letter, dated May 15, 2015, is attached as Exhibit F to the parties' Joint Stipulations of Fact.

17.     Appellants sought reconsideration of the Jurisdictional Opinion from the NRB.    In September 2015, the NRB affirmed the Jurisdictional Opinion.

## Discussion

We begin our analysis by noting that this Court is directed to grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  Because there are no material facts in dispute, the case is ripe for summary judgment review.

1.  Triggering of Act 250 Jurisdiction

The parties have each provided thoughtful and compelling arguments in support of their respective positions.  The Court has therefore spent considerable effort to complete its own research and analysis.  Our efforts have caused us to conclude that we must first review the origins and triggers of Act 250 jurisdiction.

Act 250 (10 V.S.A., chap. 151), as Vermont's state-wide land use law, was enacted to regulate significant developments and subdivisions, as defined by 10 V.S.A. §§ 6001(3) and (19). These definitions of the types of "development" and "subdivision" that are subject to Act 250 memorialize a recognition that Act 250 was enacted to only govern "significant" land uses and was not enacted to govern all land uses proposed in our State.  See, In re Rusin, 162 Vt. 185, 190 (1994) (citing In re Agency of Administration, 141 Vt. 68, 76 (1982)).

Once a regulated development or subdivision is proposed, Act 250 jurisdiction arises and the property owner and developer are required to apply for and obtain an Act 250 permit.  10 V.S.A. § 6081(a).  "Once Act 250 jurisdiction attaches [to the subject property], and a permit conditioning land use is issued, that permit and its conditions will remain in force" despite subsequent changes in the project.  In re Wildcat Construction Co., Inc., 160 Vt. 631, 632 (1993) (mem.).

Thus, Act 250 jurisdiction triggers a landowner's obligation to obtain an Act 250 permit. The analysis required for this appeal necessitates that we recognize the close relationship of the

separate legal obligations that give rise to Act 250 jurisdiction and the obligations established by any permit that may issue.

The NRB argues that jurisdiction is essentially a legal obligation that runs indefinitely with the land, absent several narrow exceptions that do not apply in this appeal (for example, revocation and abandonment), and they cite to Wildcat in support of that proposition. However, the Vermont Supreme Court specifically rejected a similar interpretation of Wildcat in a subsequent appeal entitled In re Huntley, 2004 VT 115, 177 Vt. 596 (mem.). The Huntley Court noted that in both Wildcat and Rusin, the governing permit had not yet expired; the Court offered this factual distinction as a basis for concluding that in those cases, Act 250 continues. Huntley, 2004 VT 115, ¶ 12. Conversely, Mr. and Mrs. Huntley asserted that since their permit had expired by its own terms, and that they had completed commercial operation and all reclamation required by the permit, the permit expiration also brought about a termination of Act 250 jurisdiction. Id., ¶ 3. When the Huntleys sought a jurisdictional opinion, first the District Coordinator and then the former Vermont Environmental Board[3] rejected their arguments by asserting that Act 250 jurisdiction continued beyond the term of the expired permit. Id., ¶ 4–5.

The Supreme Court reversed the Environmental Board, concluding that Act 250 jurisdiction over the Huntleys' property had ceased when the permit term expired, since all commercial activity had ceased and all site reclamation required by the permit had been completed. Id. ¶ 12 (explaining that "subsequent events, including the permit's expiration and the completion of reclamation, [can] dissolve jurisdiction."). The Huntley Court emphasized the distinction within Rusin and Wildcat: in each of those cases, the permit was still in effect. The Huntley Court explained the results in Rusin and Wildcat were based upon their conclusion that intervening events within the permit term could not cause Act 250 jurisdiction to dissolve during the term of the permit. Id.

Although not explicitly discussed in Huntley, Rusin and Wildcat may be further distinguished because in those cases the activities that triggered Act 250 were ongoing. In Rusin,

³ The former Vermont Environmental Board was the predecessor to the Vermont National Resources Board.

5

the proposed project that triggered Act 250 was a multi-lot subdivision and road construction, and a modified version of that development was built. 162 Vt. at 187. By comparison, in Huntley, the Court explained that Act 250 jurisdiction dissolved in part because of the completion of reclamation. 2004 VT 115, ¶ 12 ("the permit's expiration and the completion of reclamation [can] dissolve [Act 250] jurisdiction) (emphasis added). In one case the site was developed; in the other, it was more or less returned to a natural state. In Wildcat, commercial trucking operations triggered Act 250, and those trucking operations were ongoing when the case reached the Supreme Court. 160 Vt. at 631–32. By comparison, in Huntley the "Huntleys ceased the sand and mining operation" and were no longer "conducting any activity that constitutes development" when the action was brought. 2004 VT 115, ¶ 9. In one case, the permitted activity was ongoing; in the other, it had ceased.

The NRB asks this Court to recognize a distinction between Huntley and the case at bar, since Huntley governed the operation of a mineral extraction operation, which is an activity that is expressly exempted from the permit extension created in 1994 by 10 V.S.A. § 6090(b)(2). For the reasons detailed below, we conclude that the operative law created by Huntley is not limited to mineral extraction operations; rather, particularly in relation to the case at bar, the Huntley precedent speaks to a permit issued with an expiration date, particularly where all commercial activity and actions required by the permit have been completed prior to the expiration date.

2. Implications of 1994 Act 250 Permit Extension Amendment

A 1994 amendment to Act 250 includes a provision, now codified at 10 V.S.A. § 6090(b), for extending Act 250 permits indefinitely: 1994, No. 232, § 35. A part of that amendment, at § 6090(b)(2), reads as follows:

> Expiration dates contained in permits issued before July 1, 1994 (involving developments that are not for extraction of mineral resources, operation of solid waste disposal facilities, or logging above 2,500 feet) are extended for an indefinite term, as long as there is compliance with the conditions of the permits.

NRB contends that pursuant to § 6090(b)(2), permits issued before the date indicated and not subject to the parenthetical exceptions are automatically extended. The NRB continues its assertion with the conclusion that the statute therefore would have automatically extended the permit here, resulting in an ad infinitum continuation of Act 250 jurisdiction over the Leverenz's

6

property.  Alternatively, the NRB asserts that when Act 250 jurisdiction is triggered by a proposed or actual use of land, jurisdiction continues indefinitely, even after the expiration of any Act 250 permit.

Appellants disagree, arguing that § 6090(b)(2) does not automatically extend all permits. Rather, Appellants understand this subsection to allow the permit holder two options.  If the permit holder wishes the permit to be "extended for an indefinite term", the permit holder need simply comply with the conditions of the permit.  However, if the permit holder does not want the permit to be extended indefinitely, the permit holder can cease complying with the conditions of the permits.  The extension provision then does not apply, and the permit expires on the original expiration date.

Under Appellants' reading of the statute, non-compliance does not equate to a violation of the permit.  Instead, the permit holder is no longer carrying out any of the permitted activity. In effect, the permitted activity is no longer compliant because it ceases to exist.  Under Appellants' reasoning, the statute therefore looks to whether the permit holder is compliant (e.g. still conducting the permitted activity) at the time the permit was originally set to expire.  If not, then the indefinite renewal provision in § 6090(b)(2) is not triggered.  The permit expires, and so does Act 250 jurisdiction.

We note that the statutory amendment does not contain explicit language suggesting this right of election being vested in permit holders.

NRB, however, asserts that non-compliance constitutes a violation, and therefore concludes that the compliance phrase is intended to "ensure the [NRB]'s continued ability to revoke a permit" if the permit holder violates the permit.  NRB's Opp. to Appellants' Mot. Sum. J. at 11.  Under this interpretation, § 6090(b)(2) automatically extends all permits indefinitely and allows the NRB to revoke a permit at any time after the permit holder violates (e.g. fails to comply with) the permit.

Appellants assert that NRB's reading of the compliance clause is unreasonable because at the time the 1994 amendment was passed, NRB already had the power to revoke permits for violations.  The then-existing statutory provisions support Appellants' argument here, since at the time the amendment was passed, 10 V.S.A. § 6090(c) read as follows: "A permit may be

7

revoked by the board in the event of violation of any conditions attached to any permit or the terms of any application, or violation of any rules of the board." This subsection remained in effect until its repeal in 2005.[4] Appellants argue that reading the compliance clause in subsection (b)(2) as relating to violations is questionable, since subsection (c) already explicitly authorized the NRB to revoke permits when conditions were violated.

We conclude that the 1994 statutory language should not be read as duplicative and that subsections (b)(2) and (c) govern independent factual scenarios. The clear language of subsection (c) authorized a permit to be revoked when a violation of a permit condition occurred. Conversely, the enactment of subsection (B)(2) was considered as a benefit to holders of permits with a specific expiration date; the statutory amendment constituted an indefinite extension of the authority to operate and conduct development pursuant to the permit, "as long as there is compliance with the conditions of the permits." 10 V.S.A. § 6090(b)(2). The parties here do not dispute that at least one legislative motivation for the enactment of this statutory extension was an indefinite extension of permits that were scheduled to expire. A straight-forward reading of the language of this subsection evidences that the Legislature simply did not wish to extend the benefit of an indefinite extension of a permit's term to those developers who had caused their property to not be in compliance with their Act 250 permit.

What the parties do dispute is the impacts, intended or not, of the passage of this legislation. We therefore next turn to an analysis of those impacts, as exemplified by Appellants' claims here.

3. Whether the 1994 Amendment eliminating expiration dates may be applied here

Appellants argue that § 6090(b)(2) is an impermissible retroactive amendment to existing law, because it would "attach new legal consequences to events completed before the 1994 Amendment's enactment, and affect rights, privileges, obligations, and liabilities acquired prior to the effective date of the amendment." Appellants' Mot. Sum. J. at 8 (quotations and alterations omitted).

---

[4] See Act No. 115, § 119(b).

NRB responds, first, that because the statute is merely procedural and remedial, it does not affect Appellants' substantive rights and can be applied retroactively. Second, NRB argues that any bar to retroactivity does not apply to Appellants because when they acquired the land they were on notice that the 1994 amendment extended the Act 250 permit indefinitely, and so the amendment, as applied to them, does not cause any substantive change.

Section 6090(b)(2) has a prospective effect by eliminating the need, in the future, to extend existing permits. It also has a retroactive effect by reaching back into time and eliminating the expiration date of all permits issued before July 1, 1994 that had not yet expired when § 6090(b)(2) took effect.

A statute will normally not be applied retroactively if doing so would adversely affect the substantive rights of a party. Agency of Nat. Res. v. Godnick, 162 Vt. 588, 594 (1994); 1 V.S.A. §§ 213, 214. Statutes are deemed to affect substantive rights if they "take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." Id. at 595 (quotation omitted); see also Landgraf v. USI Film Prod., 511 U.S. 244, 280 (1994) (a statute impairs substantive rights when it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"); see also 1 V.S.A. § 214(b).

One exception to this general rule is when a legislature clearly intends a statute to affect substantive rights. Northwood AMC Corp. v. Am. Motors Corp., 139 Vt. 145, 148 (1980) ("We have early held that, absent the 'most clear and unequivocal language,' a statute affecting legally existing rights should not be construed retrospectively."). Here, there has been no evidence presented that such a result was intended by the Vermont Legislature.

Another way statutes may be applied retroactively is if they are merely procedural or remedial, and have no impact on substantive rights. Smiley v. State, 2015 VT 42, ¶ 17, 198 Vt. 529 ("there is an exception for statutes that are solely procedural or are remedial in nature") (quoting Myott v. Myott, 149 Vt. 573, 575 (1988)); Godnick, 162 Vt. at 595 ("A statute is not [impermissibly] retrospective . . . when it merely relates to prior facts or transactions but does not change their legal effect.").

We conclude that Section 6090(b)(2) was adopted with an intention of effecting procedural remedies. One stated purpose of the bill that would eventually amend § 6090(b)(2) was "to consolidate and coordinate the permit administration process." Bill as introduced by the House, 1994, H.871, § 9130 (March 4, 1994). Extending existing permits indefinitely would relieve permit holders from having to apply to extend their permits, and would relieve the State from the administrative responsibility of reviewing and processing extension applications. It appears clear that Section 6090(b)(2) changed the process to provide that relief.

Section 6090(b)(2) does not appear to be remedial, in that it was not "designed to cure a mischief or remedy a defect in existing laws . . . ." In re Dexter, 93 Vt. 304, 312 (1919), *citing* City of Montpelier v. Senter, 72 Vt. 112, 114 (1900). The pre-amendment requirement that permits had to be renewed was not a legislative accident or defect.

However, even if § 6090(b)(2) is procedural, and even if it may also have a remedial flavor, it still may not be applied retroactively if doing so would also impair substantive rights. See Smiley, 2015 VT 42, ¶ 17 ("there is an exception for statutes that are solely procedural or are remedial in nature") (emphasis added); Id. ¶ 18 (explaining that a procedural statute can be applied retroactively if it deals with "the method of obtaining redress or enforcement of rights and [does] not involve the creation of duties, rights, and obligations").

Depending on how one interprets Act 250 jurisdiction, retroactively applying the statute may also affect substantive rights.

Appellants argue that Act 250 jurisdiction is, and always has been, coterminous with Act 250 permits: when the permit expires, jurisdiction also ends. This means that when Appellants' permit was issued, it was issued with the expectation that it would expire in 2003, and Act 250 jurisdiction would also end at that time. If § 6090(b)(2) is construed to extinguish the expiration date of the permit, then it also removes the corresponding time limit on Act 250 jurisdiction, extending that jurisdiction indefinitely, and erasing the property owner's ability to enjoy their property unencumbered by the state permit review process. This would constitute a substantive impairment of Appellants' rights, because ongoing Act 250 jurisdiction (and its associated rules and regulations) put limitations on future use of the property, contrary to the settled expectations of the permit holder.

NRB argues that, even before § 6090(b)(2) was passed, the rule has been that once Act 250 jurisdiction is triggered and a permit is issued, jurisdiction extends indefinitely. In this interpretation, Act 250 jurisdiction always operated indefinitely, even after a permit expired, and so indefinite Act 250 jurisdiction existed on Appellants' land even before § 6090(b)(2) extended the life of their permit. In this interpretation, § 6090(b)(2) did not extend Act 250 jurisdiction, and so there is no effect on substantive rights.

NRB quotes the following passage from Wildcat to support its argument: "Once jurisdiction attaches, and a permit conditioning land use is issued, that permit and its conditions will remain in force even if the town subsequently adopts zoning bylaws that would have preempted Act 250 jurisdiction from attaching had the project commenced on the date of adoption." 160 Vt. at 632 (1993). NRB also cites to Rusin, 162 Vt. at 191, for the proposition that once an Act 250 permit is "used," jurisdiction cannot be avoided by abandoning the permit.

However, as noted above, the Supreme Court has explicitly held that these two cases <u>do not</u> stand for a rule that "once Act 250 is triggered, subsequent events, including the permit's expiration and the completion of reclamation, do not dissolve jurisdiction." Huntley, 2004 VT 115, ¶ 12.[5]

NRB argues that Huntley carves out a narrow exception allowing Act 250 jurisdiction to end only for certain, specific activities that are permitted for limited time periods. This is not an entirely unreasonable interpretation. The Huntley decision could have simply held that jurisdiction ends when permits expire. Instead, the holding was more specific, stating that "when a permit expires pursuant to 10 V.S.A. § 6090(b)(1), the land is no longer subject to Act 250 jurisdiction absent some activity to trigger the statute's application." Id. ¶ 1. Section 6090(b)(1) contemplates permit expiration for only for developments involving the "extraction of mineral resources, operation of solid waste disposal facilities, or logging above 2,500 feet.". The NRB

---

[5] This reference back to Wildcat and Rusin also strongly suggests that Huntley did not create a new rule regarding when Act 250 jurisdiction ends, but simply clarified or explained a rule already in existence. However, on at least one occasion this Court read Huntley as having created a new rule. See Appeals of Fontaine, Nos. 143-9-10 Vtec, 12-1-10 Vtec, slip op. at 12 (Vt. Super. Ct. Envtl. Div. Dec. 20, 2011) (Wright, J.). That case explains that when a permit was issued in 1991, "Act 250 jurisdiction was understood to continue to attach to property containing closed and reclaimed mineral extraction sites," but that after Huntley, "Act 250 jurisdiction is understood to cease once the extraction area is closed and properly reclaimed in accordance with the permit conditions governing the site." Id. In Fontaine this Court described this post-Huntley understanding of jurisdiction as a "change in the law." Id.

reads this decision narrowly to contemplate permit—and jurisdiction—expiration only in cases involving mineral extraction, solid waste, and logging above 2,500 feet.

While NRB's interpretation is plausible, the Court concludes that Appellants' broader reading of Huntley—standing for the proposition that when any Act 250 permit expires by a specific permit term (coupled with the cessation of activities and completing of all remedial work), jurisdiction ends—more reasonable than NRB's narrow reading.

Appellant's broad reading is consistent with the way this Court has read Huntley in the past. See Appeal of Eustace, No. 13-1-06 Vtec, slip op. at 11 (Vt. Envtl. Ct. Feb. 16, 2006) (Wright, J.) ("[o]nce Act 250 jurisdiction has attached, it does not 'detach' from a parcel unless the permit has expired") (citing Huntley, 2004 VT 115, ¶12).

In addition, the language of Huntley supports a broad reading. The Court in Huntley explained that "if the permit is valid indefinitely . . . then [Act 250 jurisdiction] is valid indefinitely." Id. ¶ 11. The logical inverse of this directive is that where a permit is not valid indefinitely, then jurisdiction is not valid indefinitely. The Huntley Court also explained that normally, if a permit is indefinite, "jurisdiction continues beyond the point when the permit's conditions are met and the improvements have been removed." Id. Again, the inverse of this is that if a permit is not indefinite, jurisdiction would not continue after conditions are met and improvements removed.

Huntley also noted that a potential danger presented by ending jurisdiction is to leave NRB powerless to address permit violations, such as incomplete reclamation, after the permit expires. Id. ¶ 15. The Court explained that this danger is avoidable because the permit can require reclamation prior to its expiration date. Id. In addition, if a permit holder is found to have violated a permit while it was in effect, or the permit holder carries out an activity not contemplated in the permit that would independently trigger Act 250 jurisdiction, then jurisdiction still continues after the permit is expired to the extent required for NRB to address the violation. In re Hamm Mine Act 250 Jurisdiction (Jurisdictional Opinion No.2-241), 2009 VT 88, ¶¶ 17–18, 186 Vt. 590 (extending jurisdiction beyond the permit expiration date where a violation, which also constituted a new development, occurred prior to the expiration of the

permit, and distinguishing from <u>Huntley</u>, where ending jurisdiction was appropriate because the permit holders had fully complied with permit requirements, e.g. with no violations).

A broad reading of <u>Huntley</u> is also supported by the language of the permit at issue here. The Permit explicitly grants "continuing jurisdiction during the lifetime of the <u>permit</u>." See the parties' Joint Statements of Fact ¶ 12 (emphasis added). Thus, the 1993 Permit expressly stated that jurisdiction would end when the permit expired.

NRB also cites <u>In re Audet</u>, 2004 VT 30, ¶ 13, 176 Vt. 617, which states that "[g]enerally . . . once a change of statewide impact occurs to land, Act 250 jurisdiction attaches and it cannot be undone by later events such as a cessation of the development activity." However, the Supreme Court later referred to this statement as "dicta." <u>Huntley</u>, 2004 VT 115, ¶ 13. In addition, in <u>Audet</u> the Court held that a landowner triggered Act 250 jurisdiction, but jurisdiction then ended when the landowner abandoned the activity (before acquiring a permit). <u>Audet</u>, 2004 VT 30, ¶ 14. This holding again goes against the idea that jurisdiction continues indefinitely once it attaches.

For these reasons, the Court concludes that a broad reading of the rule set out in <u>Huntley</u> is appropriate: when an Act 250 permit expires and permit conditions are met without any violations, Act 250 jurisdiction ends, particularly where the permit at issue expressly stated that jurisdiction would end.

With this broad rule in mind, we return to the question of whether retroactively applying § 6090(c)(2) would affect a permit holder's substantive rights, and concludes that it would, particularly where, as here, the permit language expressly represented that jurisdiction would end when the permit expired. Our conclusion here is supported by the reality that at the time that such a permit is issued, a permit holder should be able to reasonable rely upon the representations in the permit. <u>In re Nehemiah Associates, Inc.</u>, 168 Vt. 288, 294 (1998) (explaining that "[t]he [Act 250] permitting process requires some finality because, both at the time the permit issues and subsequently, the parties and other interested persons reasonably rely on the permit conditions in making decisions."). . Any subsequent statutory amendment to extend Act 250 jurisdiction indefinitely would retroactively rescind the property owner's substantive rights by placing restrictions on the future salability and development of the land.

See Landgraf, 511 U.S. at 271 ("The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.").

The Court's inquiry does not end here. NRB further argues that even if retroactively applying § 6090(c)(2) would normally affect a permit holder's substantive rights, Appellants' rights are unaffected because they acquired the property after that statute had come into law, and were therefore on notice that the permit would be extended indefinitely. NRB continues that the statute is therefore not impermissibly retroactive as applied to Appellants. See Landgraf, 511 U.S. at 570 (explaining that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" in determining whether a statute is impermissibly retroactive).

We conclude that this argument must fail. First, it relies on the assumption that when they purchased the land in 1998, Appellants should have known from Wildcat that Act 250 jurisdiction was permanent. However, as discussed above, this was far from clear, particularly since the face of the permit represented that jurisdiction would expire on October 1, 2003. When the Court issued its opinion in Huntley, it specifically rejected the interpretations of Wildcat and Rusin that the NRB now relies upon. 2004 VT 115, ¶ 12.

Second, the argument relies on the idea that Appellants purchased the property after § 6090(c)(2) was in effect, and they were therefore on notice that the permit (and Act 250 jurisdiction) would have been extended indefinitely by that statute. However, as discussed above, it is far from clear that permits of limited duration would automatically be extended indefinitely under the statute.

In short, neither existing law nor the passage of § 6090(c)(2) would have put Appellants on notice at the time of their purchase that Act 250 jurisdiction would continue indefinitely, contrary to the specific language of the 1993 Permit.

Because construing § 6090(c)(2) to extend Appellants' permit indefinitely, and thus extend Act 250 jurisdiction indefinitely, would retroactively impair Appellants' rights, we conclude that the statute may not be construed in this manner. Section 6090(c)(2) therefore cannot be applied as extending this permit indefinitely. The permit consequently expired, under

its original terms, in 2003. Because the permit is expired and there are no violations of the permit and no residual impacts from the permitted activity, Act 250 jurisdiction over the property also expired, as represented in the 1993 Permit.

4. <u>Whether the proposed four-lot subdivision is a material change, or a new subdivision that does not independently trigger Act 250</u>

This final point of contention is largely academic, as it depends on whether there is continuing Act 250 jurisdiction on the property. If Act 250 jurisdiction continued, the proposed subdivision would require a permit amendment. However, because Act 250 jurisdiction does not continue, the proposed four-lot subdivision does not trigger the obligation to secure an Act 250 permit amendment. Since the NRB concedes that the proposed subdivision would not independently trigger Act 250 jurisdiction, we conclude that there is no requirement for Appellants to apply for an Act 250 permit for their proposed four-lot subdivision.

Conclusion

Because § 6090(b)(2) cannot be construed to have extended this permit beyond its stated term, the permit expired in 2003. Because the permit expired in compliance with its terms, and without leaving any residual impacts, the property is no longer subject to Act 250 jurisdiction.

It is worth noting that this Decision implicates a very narrow set of circumstances where a permit would not extend indefinitely: the Act 250 permit must have a specific expiration term and it must have been issued before § 6090(b)(2) came into effect, the permitted project must have effectively been extinguished before the permit's original expiration date, with the land returning to its original state and without any adverse impacts or permit violations.

This completes our review of this Act 250 jurisdictional opinion appeal. A Judgment Order therefore accompanies this Decision.

Electronically signed on September 30, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division