## AGENCY OF NATURAL RESOURCES v. Richard F. TOWNS

[790 A.2d 450]

No. 00-009

September 26, 2001. Defendant Richard F. Towns appeals from a decision of the Environmental Court affirming a determination by the Secretary of the Agency of Natural Resources (Agency) that Towns had operated a solid waste management facility without proper certification in violation of 10 V.S.A. § 6605(a). Towns argues that he was engaged in recovery and reuse of materials, not solid waste disposal, and that the Agency had no authority to issue an administrative order directing Towns to clean up the site. He also contends that the Agency's action was barred by the statute of limitations. We affirm.

This case has a lengthy history. In 1972 Towns purchased a parcel of land in the Town of Johnson and built a home there. The rear foundation of the home was laid next to a steep embankment. To create a useable back yard, he filled the space with construction and demolition waste along with solid waste. He also filled a hole in his front yard with similar materials. Incidental to his normal course of business as a trash hauler, Towns continued to dump materials on the property until he sold it to James and Christine Wilkens in June of 1987.

Before he sold the property, Towns informed the Wilkens of the existence of the fill. He assured them that it was "safe and legal," but they remained concerned. Within a few weeks of purchasing the property in 1987, Mrs. Wilkens contacted the Attorney General's office, hoping to receive some assistance. She testified that she spoke with someone in the office, though she could not identify that person. In that conversation, she identified herself and her property and explained

her concern over the fill that Towns had dumped in her back and front yards. Based on her responses to several questions about the condition of the site, she was told that such dumping was a common occurrence in Vermont, and that the state had no authority to remedy the problem because the fill was covered, was not visible from the road, and was not leaching into water. There is also some evidence that Mrs. Wilkens attempted to contact the Attorney General's office a second time in 1989, but again the office took no action.

In 1992, the Wilkens attempted to sell the property purchased from Towns. A prospective purchaser, concerned over the contents of the fill, arranged to have test pits dug to determine the fill's content. A friend of the prospective purchaser contacted an environmental enforcement officer for the Agency, who then observed the dig. Each of the test pits revealed solid waste.

In 1996, the Agency issued an administrative order pursuant to 10 V.S.A. § 8008, alleging that Towns had constructed and operated a solid waste disposal facility without the proper certification in violation of 10 V.S.A. § 6605(a). The order required Towns to hire a consultant to develop a site remediation plan, remove the solid waste, and restore the site with clean fill. Towns appealed the Agency's order to the Environmental Court, which affirmed the Agency's determination that Towns violated 10 V.S.A. § 6605(a) but vacated and remanded the administrative order to clarify the remediation section.

In *Agency of Natural Resources v. Towns*, 168 Vt. 449, 724 A.2d 1022 (1998) (*Towns I*), Towns advanced several arguments, including claims that there was no violation under applicable law, that the Agency had no power to issue the order, and that the action was time-barred. We reversed and remanded for additional findings based solely on Towns' statute of limitations claim and declined at that point to address his other claims. The Environmental Court has determined that the action was indeed timely, and now Towns appeals that determination and renews each of his original claims for relief.

We address first the statute of limitations issue. Under 10 V.S.A. § 8015, an environmental enforcement action must be "commenced within the latter of: (1) six years from the date the violation is or reasonably should have been discovered; or (2) six years from the date a continuing violation ceases." The trial court determined that the violation ceased when Towns sold the property, and the Agency has not challenged this finding. Accordingly, in *Towns I* we held the sole issue was whether the Agency's enforcement action was brought within six years from the date the violation was or reasonably should have been discovered. Thus, applying principles of agency and notice, we held that if Mrs. Wilkens' 1987 communication to the Attorney General's office was sufficient reasonably to have triggered an investigation, the action would be barred by the statute of limitations, even if the Agency did not know of the communication. *Id.* at 454, 724 A.2d at 1025.

The Environmental Court, however, failed to make critical findings on the identity of the person with whom Mrs. Wilkens had spoken and the nature and content of the information she had conveyed. The court also failed to draw any conclusions "as to whether that information should reasonably have triggered an investigation that would have disclosed the alleged violation and prompted an enforcement action." *Id.* We remanded this case to the Environmental Court for further proceedings to address these factual and legal issues, keeping in mind that the burden of establishing a statute-of-limitations defense rests with the party pleading it, here Towns.

Upon remand, both parties agreed that no further evidentiary hearing was

necessary and submitted requests for findings based on evidence already in the record. After further review of the existing evidence, the Environmental Court found that there was insufficient evidence in the record to make findings as to the identity of the person in the Attorney General's office with whom Mrs. Wilkens had spoken, this person's area of responsibility or whether that person was an attorney. On the subject matter of the conversation, the court found that Mrs. Wilkens did not provide sufficient information to prompt any further investigation into whether the fill material, its source, or its extent constituted illegal disposal. The court also found that she contacted the solid waste district in 1989, but did not again contact the Attorney General's office. Based on these findings and its earlier findings, the Environmental Court concluded that the violation was not discovered, nor was it reasonable that it should have been discovered, until 1992 when an environmental enforcement officer observed the drilling of the test pits on the property. Thus, the court concluded, the 1996 administrative order is not barred by the statute of limitations. See 10 V.S.A. § 8015.

In *Towns I*, we held that the statute of limitations, 10 V.S.A. § 8015, accrues upon the " 'discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.' " 168 Vt. at 452, 724 A.2d at 1024 (quoting *Union Sch. Dist. v. Lench*, 134 Vt. 424, 427, 365 A.2d 508, 511 (1976)); see also *Lillicrap v. Martin*, 156 Vt. 165, 176, 591 A.2d 41, 47 (1989) (" 'only when a plaintiff discovers or reasonably should discover the injury, its cause, and the existence of a cause of action' ") (quoting *Ware v. Gifford Memorial Hosp.*, 664 F. Supp. 169, 171 (D. Vt. 1987)). The issues upon which we directed the court to make findings in *Towns I* are all relevant in determining whether a person of ordinary intelligence and prudence should have been put on inquiry which, if it had been pursued, would have led to discovery.

On remand, the Environmental Court concluded that Towns failed to meet the applicable standard in two respects: (1) the content of the conversation did not provide sufficient information to prompt further investigation into whether the fill material constituted an illegal disposal, and (2) the court could not identify the position of the person to whom Mrs. Wilkens spoke. We agree. With respect to the content of the conversation, findings will stand if there is any reasonable and credible evidence to support them, even if contrary evidence exists. Conclusions must be supported by the court's findings. *Cmty. Feed Store v. Northeastern Culvert Corp.*, 151 Vt. 152, 155, 559 A.2d 1068, 1069 (1989). The findings the court made are supported by the evidence and support the court's conclusion that discovery did not occur and trigger the statute of limitations.

With respect to the identity of the person in the Attorney General's office, because Towns has the burden of establishing the statute-of-limitations defense, the inability to make findings essential to that defense defeats it. See *Capital Candy Co. v. Savard*, 135 Vt. 9, 12, 369 A.2d 1361, 1362 (1976) (trial court's inability to make finding on issue is equivalent of making finding against party with burden of proof on issue); *Monti v. Granite Savings Bank & Trust Co.*, 133 Vt. 204, 209, 333 A.2d 106, 109 (1975) (defendant has burden of establishing statute-of-limitations defense). The equivocal nature of the evidence supports the court's inability to make findings on some of the issues specified in the order to remand, specifically whom Mrs. Wilkens contacted at the Attorney General's office, that person's area of responsibility, and whether that person was an attorney. Thus, without the

court's findings Towns has failed to meet his burden.

Second, Towns argues that he was engaged in the recovery and reuse of construction and demolition materials for landfill, and not the disposal or discarding of solid waste in a solid waste disposal facility. At the time of the alleged disposal, "Solid waste" was defined as "any garbage, refuse, . . . and other discarded material including solid . . . materials resulting from . . . commercial . . . operations." 1977, No. 106, § 1, adding 10 V.S.A. § 6602(2). "Disposal" was defined as "the ultimate and final deposition of any waste on the land." *Id.* § 6602(12).[1] A "disposal facility" was defined as "a location at which waste is disposed of." *Id.* § 6602(13). Towns was a commercial trash hauler by trade, and the material he used to fill the yard behind his house was garbage and refuse he obtained through his commercial enterprise. After he picked up the discarded material, he dumped it into his back and front yards with the intent that it remain there permanently.

Although we acknowledge the dispute over whether construction and demolition debris was treated as solid waste by the Agency, the evidence supports the court's conclusion that the material placed in the yard included other refuse clearly falling within the definition of solid waste: hot water heaters, plastic, insulation, metal strapping, buckets, a rubber boot, a bowling ball, venetian blinds, a ski boot, a container labeled paint thinner, a leaking can of paint stain, old skis, an engine block, plastic sheets, metal barrels, and even a kitchen sink.

---

[1] In 1981, the Legislature expanded the definition of "disposal" and added a definition of "facility." 1981, No. 102, § 2, amending 10 V.S.A. § 6602(10), (12). Neither change affects the disposition of this case.

Towns' actions are governed by the statutory definition of disposal. He argues, however, that his actions fit better within the 1989 Solid Waste Management Rules definition of "reuse" as "the use of a material or product more than once before . . . discarded into the waste stream." This argument is creative, but contrary to the clear meaning of the language of the statute and rules. By dumping the refuse into his back yard, Towns discarded the material into the waste stream by finally disposing of it there. Even if we were to accept his argument that he reused the waste by using it to create a level back yard, and did not intend to create a solid waste disposal facility, his actions fall squarely within the language of the statute.

Finally, Towns argues that the Agency had no authority to issue an administrative order directing him to clean up the site because the order violates the prohibition against retroactive laws contained in 1 V.S.A. § 214(b). Towns makes this argument because the Uniform Environmental Enforcement Act (UEEA), under which the Agency and court acted, became effective on July 1, 1989, well after Towns sold the property. As we held in *Agency of Natural Resources v. Godnick*, 162 Vt. 588, 594, 652 A.2d 988, 992 (1994), Vermont statutory law and case law normally prohibit retrospective application of new and amended statutes. 1 V.S.A. §§ 213, 214. "Retrospective laws are defined as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." *Godnick*, 162 Vt. at 595, 652 A.2d at 992 (internal citation and punctuation omitted).

The Environmental Court found that Towns violated 10 V.S.A. § 6605(a) by operating a solid waste management facility without a certificate from the Agency. In evaluating Towns' argument, we emphasize that this statute, which

defines the substantive violation, has not changed substantially up until the time at which the Agency issued the administrative order, 10 V.S.A. § 6605(a) (in effect in 1996).[2] What changed is the enforcement regime. UEEA seeks to increase enforcement efficiency of chapter 159, Vermont's waste management statute. In 10 V.S.A. §§ 8003(a)(12) and 8008, the UEEA authorizes the Agency to issue administrative orders to enforce Vermont's solid waste management and disposal law, including 10 V.S.A. § 6605(a).

We turn to Towns' two main arguments why the Agency's administrative order is barred as retroactive under 1 V.S.A. § 214(b): (1) it seeks retrospectively to apply the current § 6605(a), and not the law in effect when Towns committed his violation; and (2) § 8008 grants the Agency injunctive power, which Towns argues the Agency did not have from 1980 to 1987. The first argument is necessarily rejected in our conclusion that § 6605(a) has not changed in any material respect. Towns never had a vested right to operate the facility without certification, and he has the same duty to obtain certification now as he had during the period of violation. Therefore,

---

[2] The original language prohibited the operation of "any treatment or disposal facility" without a certificate. 1977, No. 106, § 1, adding 10 V.S.A. § 6605(a). In 1987, the language was modified to require certification of a "solid waste management facility." 1987, No. 78, § 8, amending 10 V.S.A. § 6605(a). The term "solid waste management facility" is undefined in statute, but the regulation definition of "solid waste management" includes "activities that result . . . in the disposal of solid waste." 8 Code of Vermont Rules 12 036 003-11 (1999). We conclude that the change in terminology did not change Towns' substantive violation in any material respect.

the Agency has not applied § 6605(a) retrospectively.

Towns further argues that the order is retroactive because the Agency is exercising powers granted him in 1989 to remedy a violation that terminated two years prior, in 1987. In essence, Towns argues that under the enforcement provisions of the solid waste management law in effect before § 8008 was enacted, the Agency had no power to issue administrative orders under the section. We must, however, evaluate the Agency's current enforcement powers in relation to the enforcement powers present when Towns committed the violation. The earlier enforcement provisions authorized the Agency to "[i]ssue compliance orders as may be necessary to effectuate the purposes of [chapter 159]." 10 V.S.A. § 6603(2). To supplement this power, the Agency was granted broad power to remedy any imminent and substantial health or environmental hazards. 1977, No. 106, § 1, adding 10 V.S.A. § 6610 (repealed 1987). The Agency could also request that the Attorney General or a state's attorney seek to enjoin such activities. Id. § 6610(2). Under the more efficient procedural framework of the UEEA, the Agency's powers have been consolidated. Now, the Agency has the direct authority to issue administrative orders when it determines there has been a violation of any of a specified list of environmental statutes, including the solid waste management law. Id. § 8003(a). This consolidated authority supplements any authority to initiate criminal or civil proceedings. Id. § 8003(b).

"Statutory changes that are procedural in nature, as opposed to those that affect preexisting rights and obligations," we said in Godnick, "may be applied retrospectively." 162 Vt. at 595-96, 652 A.2d at 993. "Enforcement efficiency may have improved under an improved procedural framework, but defendant has no preexisting right in a less efficient enforcement scheme as long as the same

substantive standards are used." *Id.* at 596, 652 A.2d at 993. In this case, the substantive standards are the same and the enforcement regime is more efficient but no more powerful than what existed when Towns' violations occurred. Enforcement of the Agency's order does not violate our prohibition on retrospective application of new statutes.

*Affirmed.*

Motion for reargument denied January 16, 2002.

