STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re Fern Hill Farm, Ltd., Work Plan | } | Docket No. 121-6-07 Vtec |
| | } | |

## Decision on Motion for Summary Judgment

Appellant Fern Hill Farm, Ltd., appealed from a determination of the Secretary of the Vermont Agency of Natural Resources ("ANR" or "Agency") rejecting a work plan ("Work Plan") submitted by Fern Hill Farm for the remediation of waste illegally disposed of at a farm dump. In July 2006, Fern Hill Farm submitted the Work Plan to ANR pursuant to this Court's January 20, 2006 Decision and Order in Docket Number 129-8-03 Vtec ("January 20, 2006 Order"), which modified the Agency's Administrative Order for the solid waste illegally buried on Fern Hill Farm.

Fern Hill Farm was previously represented by John D. Hansen, Esq., and is now represented by John R. Ponsetto, Esq., and Heather Rider Hammond, Esq. The Agency has been represented by Gary S. Kessler, Esq.

Fern Hill Farm has moved for summary judgment on all issues raised in its Statement of Questions, which generally asks whether ANR summarily denied the Work Plan without considering its merits, which Fern Hill Farm contends is in contravention of the Court's directives, as announced in the January 20, 2006 Order. ANR opposes the pending summary judgment motion and asserts that the Work Plan was rejected because it failed to comply with ANR policy and the language from the 2006 Order.

## Factual Background

Rather then repeat the factual history surrounding the farm dump on Fern Hill Farm, we incorporate by reference the Findings already made by this Court, following a merits hearing, in the January 20, 2006 Order. See Agency Natural Res. v. Fern Hill Farm, Ltd., No. 129-8-03 Vtec (Vt. Envtl. Ct. Jan. 20, 2006) (Wright, J.).[1] Against this background, we need only add the following facts, which we understand to be undisputed unless otherwise noted below:

---

[1] The January 20, 2006 Order was amended on April 28, 2006 in response to a motion to reconsider or alter filed by ANR. See Agency Natural Res. v. Fern Hill Farm, Ltd., No. 129-8-03 Vtec (Vt. Envtl. Ct. April 28, 2006) (Wright, J.). However, the revised decision did not implicate the Work Plan, but rather clarified a penalty provision unrelated to this appeal.

1. On July 13, 2006, in response to the January 20, 2006 Order, Fern Hill Farm submitted its Work Plan to the ANR Waste Management Division. The Work Plan was prepared by an engineering firm retained by Fern Hill Farm. The Work Plan provided a framework for investigating possible environmental contaminants that may be leaching from the farm dump site, via either ground or surface waters.

2. Because the pre- and post-1991 waste was buried in the same vertical column and was located along the same groundwater flow path, the Work Plan proposed to evaluate the entire body of buried solid waste as one risk element. The Work Plan proposed to install four monitoring wells at varying depths near the boundary of the farm dump and then to conduct groundwater sampling at the four wells.

3. The groundwater sampling plan had various parameters to detect a variety of possible contaminants, including heavy metals, volatile organic compounds, semi-volatile organic compounds, polycyclic aromatic hydrocarbons, and other contaminant indicators. Also, the Work Plan proposed to conduct a "Sensitive Receptor Survey" in order to evaluate any contamination based on the groundwater flow direction, nearby potable wells, the basements of nearby structures, and the nearby surface waters.

4. After the collection of data, the Work Plan proposed the submission of a comprehensive report describing the results of this preliminary evaluation and recommendations for appropriate follow-up steps. The Work Plan did not exclude the possibility that its operation may result in a requirement that some or all of the buried waste be removed and disposed of in an off-site certified waste disposal facility.

5. On October 2, 2006, the ANR Waste Management Division reviewed the proposed Work Plan and concluded that it "cannot approve the proposed work plan for clean-up since it does not propose any clean-up of illegally disposed solid waste." Letter from Barb Schwendtner, Compliance Specialist, ANR Solid Waste Program, to Anthony Stout, Senior Planner, Heindel & Noyes, at 1 (Oct. 2, 2006). Ms. Schwendtner stated that "[w]aste—except for IWMEA[2] eligible wastes such as concrete and brick—cannot remain in place without a solid waste certification (required by 10 V.S.A. § 6605(a)(1)). . . . The site does not meet the standards of the Solid Waste Management Rules required for approval of a discrete disposal facility." Id. ANR then

---

[2] Insignificant Waste Management Event Approval.

directed Fern Hill Farm to "submit a clean-up and disposal plan that complies with the Agency's interpretation of the Judge's [January 20, 2006 Order]." Id.

6.      On October 31, 2006, Fern Hill Farm—through its consulting engineers—sent a letter to ANR, requesting reconsideration of the denial of the proposed Work Plan. Fern Hill Farm indicated that under its interpretation of the January 20, 2006 Order, "leaving waste in place may be an acceptable remedial action, based on proper scientific analysis, without the need to obtain a Solid Waste Certification." Letter from Anthony Stout, Senior Planner, Heindel & Noyes, to P. Howard Flanders, Dir., Waste Mgmt. Div., ANR, at 1 (Oct. 31, 2006).

7.      On December 22, 2006, in response to Fern Hill Farm's request for reconsideration, ANR denied the request and reiterated its policy requiring all non-IWMEA eligible materials to be removed and disposed of at a certified disposal facility.

8.      On January 17, 2007, Fern Hill Farm—through its consulting engineers—sent a letter to the Commissioner of the Department of Environmental Conservation ("DEC") to serve as an informal appeal of the earlier decisions from the ANR Waste Management Division. The letter generally reiterated many of the same arguments that Fern Hill Farm posited previously.

9.      On May 11, 2007, the DEC Deputy Commissioner responded to Fern Hill Farm's letter by again rejecting its Work Plan, based on ANR policy. The Deputy Commissioner stated that "[t]he Solid Waste Program Compliance Procedure . . . requires that '[s]olid waste stored or disposed outside of a certified solid waste management facility shall be removed and disposed [of] at a certified facility, and evidence of disposal at an approved facility is required to be submitted.'" Letter from Justin Johnson, DEC Deputy Comm'r, to Anthony Stout, Senior Planner, Heindel & Noyes, at 1 (May 11, 2007).

10.      Meanwhile, Fern Hill Farm had been working on completing the sensitive receptor investigation as described in the Work Plan. In March 2007, Fern Hill Farm's consulting engineers presented their client with a report of the sensitive receptor investigation. The report described the methods used and data gathered on and around the farm dump and concluded that there were no current air quality or ground or surface water quality impacts from the farm dump.

## Discussion

Fern Hill Farm moved for summary judgment on all of the issues raised in its Statement of Questions, which generally asks whether ANR summarily denied the Work Plan without considering its merits, in contravention of the January 20, 2006 Order. The Agency opposed the

motion and asserted that the Work Plan was rejected because it failed to comply with ANR policy and the January 20, 2006 Order.

In this <u>de novo</u> appeal, summary judgment under V.R.C.P. 56(c) is appropriate only "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." <u>In re Carter</u>, 2004 VT 21, ¶ 6, 176 Vt. 322 (citing <u>Sabia v. Neville</u>, 165 Vt. 515, 523 (1996)). We review the pending motion in this light.

We view the main issue in this <u>de novo</u> appeal as not being a broad substantive question, but rather a narrow procedural question. That is, we are not evaluating whether the Work Plan is an appropriate vehicle to remove illegal waste from the farm dump, but rather whether ANR acted appropriately when it declined to review the substance of the Work Plan. The issue, as framed in this new docket, is fully cognizant of the directives of the January 20, 2006 Order.

We first note that the January 20, 2006 Order was not appealed and became final.[3] Thus, that decision is binding insofar as the doctrine of collateral estoppel (now known as issue preclusion) applies. Issue preclusion prevents re-litigation of a factual or legal issue that was decided in earlier litigation that is now final, was necessary to the disposition of that litigation, and included the party against whom preclusion is sought. See, e.g., <u>In re T.C.</u>, 2007 VT 115, ¶ 20, 182 Vt. 467 (citing <u>Scott v. City of Newport</u>, 2004 VT 64, ¶ 8, 177 Vt. 491 (2004)). The doctrine applies when all five of the following criteria are met:

> (1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same [in both actions]; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion . . . is fair.

<u>Trepanier v. Getting Organized, Inc.</u>, 155 Vt. 259, 265 (1990).

All five factors are met in this case: the parties are the same; the earlier decision resulted in a final judgment on the merits; both actions involve the same enforcement action against Fern Hill Farm; both parties had a full and fair opportunity to litigate the issue in the earlier merits hearing; and it is fair to bind the parties to the terms of the unappealed January 20, 2006 Order. Thus, although ANR correctly argues here that the Court does not have the authority in this proceeding to modify ANR policies and regulations, the Court is charged here with determining

---

[3] Although the Agency filed a motion to reconsider a penalty provision of the January 20, 2006 Order, the Agency's motion did not ask this Court to reconsider the language addressing the Work Plan. See footnote 1, above.

whether the ANR determination that gave rise to this appeal conformed with the January 20, 2006 Order. We conclude that the ANR determination conflicts with the 2006 Order.

Because the January 20, 2006 Order is binding upon the parties to this dispute, our first step in this inquiry is to look at the language of that Order. In the January 20, 2006 Order, this Court generally affirmed the ANR Administrative Order issued against Fern Hill Farm relating to its illegal dump. However, the Court did modify the Administrative Order in some respects. Specifically, due to the practical difficulty of distinguishing between waste dumped before July 1, 1991 (exempted waste), and waste dumped after July 1, 1991 (non-exempted waste),[4] the Court amended Paragraph C of the Administrative Order so that it read as follows (with the underlined sections representing the Court additions):

> No later than sixty (60) consecutive calendar days following the effective date of this Order, Respondent Fern Hill Farm, LTD shall require the hired consultant to submit a work plan for clean up of the site <u>including proposals for any appropriate removal of material placed in the site after July 1, 1991, and including proposals for approval of burial of any of the material in the site</u> to the Solid Waste Management Program (SWMP) for approval. The submitted plan should provide for proper disposal of all solid waste <u>removed from the site</u> at a Vermont certified disposal or treatment facility, or an out of state disposal and treatment facility approved by the SWMP, and for the inspection and documentation of the clean up by the consultant. <u>Reasons shall be stated for disapproval of any element of the proposed plan, and Respondents may apply to the Secretary for review of any such decision under the Agency's internal administrative procedures.</u>

January 20, 2006 Order at 17.

Implicit in this Court's decision to modify the original ANR Administrative Order is a determination that further provisions were needed to satisfy the obligation that "the remedial provisions of the order must allow the consultant to distinguish between household waste disposed legally at the site during the period in which farm dumps were exempt, prior to July 1, 1991, and other waste that may be required to be removed." Id. at 12 (citing Agency of Natural Res. v. Towns, 173 Vt. 552, 555–57 (2001)). "Similarly, the remedial provisions of the order should allow the consultant to analyze whether any of the waste in the site may qualify to be left in place or buried." Id. (citing 10 V.S.A. § 8012(b)(2)). As noted earlier, these portions of the

---

[4] Vermont Solid Waste Management Rules § 301(b)(1) exempted from regulation non-hazardous residential solid waste (generated by the owner at the site) that was already in the ground in 1989, and that exemption continued for two years. Thus, pre-1991 non-hazardous residential waste is exempt from regulation, and post-1991 non-hazardous residential waste is subject to regulation. The Fern Hill Farm dump site received waste for roughly fifty years before 1991 and for around ten years after 1991 (meaning through 2001). See January 20, 2006 Order at 3–4.

January 20, 2006 Order were not appealed and became final. Fern Hill Farm viewed this language as a mandate requiring an appropriate work plan be submitted that distinguishes between exempt and non-exempt waste and the remediation plan for that waste.

Conversely, ANR argues that the above passages are ambiguous because they "refer[] to th[e] fact that a determination was to be made regarding whether any of the wastes had been deposited prior to 1991, and whether that pre-1991 waste could QUALIFY to be left in place or buried." Agency Mem. at 3 (emphasis in original). ANR's assertion of ambiguity in the 2006 Order is based on a strict adherence to Agency policy: that the obligation to remove illegally disposed wastes is unconditional and that such waste must be removed and properly disposed of off-site, rather than simply buried in place. The Agency cites first to its Solid Waste Program Compliance Procedures that have been in place since 1997 and then to 10 V.S.A. § 6605, which generally requires that waste, except insignificant waste, may not be disposed of or remain in place at a site that does not have a solid waste management facility certification.

While we certainly appreciate and respect the precedential authority of ANR's established policies and technical judgment, and will follow applicable state statutes, we cannot simply defer to ANR, especially in light of this Court's well-reasoned 2006 Order, by which the Court modified the applicable ANR Administrative Order. The January 20, 2006 Order made a specific finding that the "site had been used as a farm dump for approximately fifty years prior to July 1, 1991." In light of this finding, we do not see the conflict between the 2006 Order and ANR policy, as any non-hazardous waste dumped before July 1, 1991 was not illegal. Furthermore, that 2006 Order expressly authorized submission of a work plan that recommended leaving certain waste buried on site, and directed ANR to give such a recommendation, if made, substantive consideration and to provide notice of the grounds for "disapproval." ANR had the authority to appeal the January 20, 2006 Order, but instead chose not to, which we regard as a tacit acknowledgement that ANR is bound by the final terms of the 2006 Order.

We do not find the January 20, 2006 Order ambiguous with respect to the possibility of leaving unregulated or exempt solid waste where it currently is—buried in the ground. Indeed, the January 20, 2006 Order noted the possibility that in this particular case (based on a number of factors), even the illegally dumped waste might be allowed to remain buried, if done in accord with an approved and environmentally sound work plan, after ANR's substantive review and approval. We understand that use of the phrase "appropriate removal" in the January 20, 2006

6

Order implies that such removal might not be appropriate—that leaving certain materials buried might be sound—depending on what other safeguards are proposed in the Work Plan. See January 20, 2006 Order at 17.[5] The January 20, 2006 Order also made it clear that ANR had an obligation to provide its reasoning for rejecting any portion of the proposed Work Plan submitted by Fern Hill Farm.

We therefore conclude that ANR had a duty to evaluate the merits of the Work Plan in light of the 2006 Order, and then proceed accordingly. Rather than carry out this duty, ANR summarily denied the Work Plan because it did not adhere to established ANR policy. ANR's categorical rejection might be appropriate when ANR is evaluating other work plans, but it was inappropriate here because it ignored this Court's explicit amendment of the original Administrative Order. That is, in this particular case, the Court provided Fern Hill Farm with flexibility to formulate a work plan that would determine the appropriate measures to remediate the possible environmental degradation from the farm dump, to achieve the intended result of protecting Vermont's environment, while at the same time not saddling Fern Hill Farm with the expense of extracting materials that were not illegally disposed or that are not appropriate for removal. If the Work Plan was not likely to achieve this intended result, ANR has the opportunity to review it and make reasoned explanations and modifications to the Work Plan.

Nothing in our Decision here should be read as foreclosing ANR's right, after substantive review, to require that certain portions of the farm dump be excavated so that illegally disposed waste can be removed. Nor does the present ruling foreclose ANR from requiring other remediation activities to be undertaken if the need for such activities is shown. However, given this Court's January 20, 2006 ruling, ANR needs a material foundation in order to make such directives, and must provide reasons for rejecting any portion of the proposed Work Plan. In this particular case, where this Court has already issued a ruling, ANR does not have the discretion to reject the Work Plan out of hand solely because it is not consistent with established ANR policy. The January 20, 2006 Order specifically required "[r]easons [to] be stated for disapproval of any

---

[5] We note that our Decision here is based upon this Court's fact-specific ruling on the merits, as memorialized by the January 20, 2006 Order. Outside of the facts of this particular case, nothing in this Decision should be seen as setting a general precedent of allowing illegally dumped waste to remain buried, and nothing in this Decision should be seen as overturning any ANR policy that categorically requires such waste to be removed. Rather, this Decision is limited to the specific facts that were previously evaluated by this Court on January 20, 2006 Order, and to our interpretation of that Order in light of the parties' actions since then.

7

element of the proposed plan." To ignore the modifications this Court made to the original Administrative Order appears unjustified on the record now before us.

This Court previously exercised its discretion and authority under 10 V.S.A. § 8012 to modify the original ANR Administrative Order; that January 20, 2006 Order was not appealed and is now binding on the parties' further actions, rights, and responsibilities. Because we conclude, as a matter of law, that ANR failed to review Fern Hill Farm's Work Plan in accordance with the January 20, 2006 Order, we remand this matter back to ANR, with the directive that it evaluate the merits of the Fern Hill Farm Work Plan.

## Conclusion

For all the reasons more fully discussed above, we **GRANT** Fern Hill Farm's motion for summary judgment, as we have concluded that, even when viewing the material facts in a light most favorable to ANR, the Work Plan was categorically rejected without a review of its substance.

This concludes the proceedings before this Court in this appeal. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 12th day of December 2008.

_____
Thomas S. Durkin, Environmental Judge

8